No. 89-355

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

PATRICK JAMES BOLAND,

      Petitioner and Respondent,

  -vs-

STATE OF MONTANA,

      Respondent and Appellant.

FILED
MAY -2 1990
Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Marc Racicot, Attorney General, Helena, Montana
Peter Funk, Asst. Atty. General, Helena
Patrick Paul, County Attorney, Great Falls, Montana
Stephen Hagerman, Deputy, Great Falls

    For Respondent:

        Patrick F. Flaherty; Flaherty & Winner, Great Falls,
Montana

Submitted on Briefs:  Feb. 2, 1990

Decided:  May 2, 1990

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

The State of Montana appeals from Eighth Judicial District Judge John McCarvel's judgment which concluded that the officer who arrested Patrick Boland for driving under the influence of alcohol did not have reasonable cause to arrest Boland at the time the officer stopped him. The District Court held that Boland was therefore entitled to immediate restoration of his driver's license and driving privileges. We reverse the lower court's judgment.

Only one issue is presented: Was the District Court's ruling that the arresting officer did not have reasonable cause to stop Boland and arrest him for driving under the influence of alcohol clearly erroneous given the evidence before the court?

At approximately one in the morning of January 26, 1989, police officer Donald Scheele observed a car weaving down Central Avenue in downtown Great Falls, Montana. From a distance of about three car lengths, Officer Scheele followed the vehicle for one and one-half to two blocks. Because he was transporting a prisoner, Officer Scheele radioed for assistance and Officer Steve Lohse, who was patrolling the area, agreed to continue the surveillance. Officer Scheele relayed the vehicle's description and license plate number to Officer Lohse.

Officer Lohse then followed the vehicle for several blocks until it pulled into a restaurant parking lot. While Officer Lohse did not see any indication that the vehicle was being driven

erratically, he did observe that the driver stumbled as he got out of the car and had difficulty maintaining his balance. When Officer Lohse asked to see the driver's license he immediately noticed the odor of alcohol on the breath of the driver, Patrick Boland.

Officer Lohse stated that Boland appeared to have been drinking and Boland replied that he had just come from The City Bar. At that point Officer Lohse administered three field sobriety tests. Boland failed two tests and his speech was slurred during the third. At that point Officer Lohse advised Boland he was under arrest for driving under the influence of alcohol. Boland refused to submit to a chemical test.

Following his arrest, Boland's driver's license was suspended in accordance with § 61-8-402, MCA, which provides:

> (1) Any person who operates a vehicle upon ways of this state open to the public shall be deemed to have given consent, subject to the provisions of 61-8-401, to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood if arrested by a peace officer for driving or in actual physical control of a vehicle while under the influence of alcohol. The test shall be administered at the direction of a peace officer having reasonable grounds to believe the person to have been driving or in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol. The arresting officer may designate which one of the aforesaid tests shall be administered.
>
> . . .
>
> (3) If a resident driver under arrest refuses upon the request of a peace officer to submit

3

to a chemical test designated by the arresting officer as provided in subsection (1) of this section, none shall be given, but the officer shall, on behalf of the department, immediately seize his driver's license. The peace officer shall forward the license to the department, along with a sworn report that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a vehicle upon ways of this state open to the public, while under the influence of alcohol and that the person had refused to submit to the test upon the request of the peace officer. Upon receipt of the report, the department shall suspend the license for the period provided in subsection (5).

(4) Upon seizure of a resident driver's license, the peace officer shall issue, on behalf of the department, a temporary driving permit, which is valid for 72 hours after the time of issuance.

(5) The following suspension and revocation periods are applicable upon refusal to submit to a chemical test:

(a) upon a first refusal, a suspension of 90 days with no provision for a restricted probationary license;

(b) upon a second or subsequent refusal within 5 years of a previous refusal, as determined from the records of the department, a revocation of 1 year with no provision for a restricted probationary license.

. . .

(7) All such suspensions are subject to review as hereinafter provided.

Boland then filed a petition for a hearing to determine "whether a peace officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle upon the ways of this state open to the public, while under

4

the influence of alcohol, whether the person was placed under arrest, and whether such person refused to submit to the test" in accordance with § 61-8-403, MCA. The hearing was held before Judge McCarvel on May 9, 1989. At the conclusion of the hearing, the District Court found that Officer Lohse did not "of his own knowledge" have reasonable cause to stop Boland and arrest him for driving under the influence of alcohol. The District Court ordered Boland's driver's license be restored to him. It is from this order the State appeals.

A hearing held under § 61-8-403, MCA, is "a civil proceeding separate and distinct from a criminal trial on the charge of operating a motor vehicle while under the influence of alcohol." Gebhardt v. State (Mont. 1989), 775 P.2d 1261, 1265, 46 St.Rep. 1114, 1117 (citing In re Blake (1986), 220 Mont. 27, 31, 712 P.2d 1338, 1341). The purpose of such a hearing is to review whether a petitioner's license was properly revoked following the petitioner's refusal to submit to a chemical test, and the judge determines only:

> (1) whether the arresting officer had reasonable grounds to believe the following:
> (a) that the petitioner had been driving or was in actual physical control of a vehicle;
> (b) that the vehicle was on a way of this state open to the public; and
> (c) that the petitioner was under the influence of alcohol;
> (2) whether the individual was placed under arrest; and
> (3) whether the individual refused to submit to a chemical test. (Emphasis in original.)

Gebhardt, at 1265, 46 St.Rep. at 1117-18.

5

The only issue at the May 9 hearing was whether the arresting officer had reasonable grounds to believe that the petitioner was under the influence of alcohol. Petitioner Boland did not contest that he was driving the vehicle on a way of this state open to the public, nor did he contest that he had been placed under arrest and refused to consent to a chemical test.

Regarding what constitutes "reasonable grounds" we have recently clarified the standard:

> [R]easonable grounds exist if the facts and circumstances within the personal knowledge of the arresting officer would be sufficient to warrant a reasonable person to believe that the motorist is under the influence of alcohol.

Gebhardt, at 1266, 46 St.Rep. at 1119.

The District Court seems to base its ruling that the arresting officer did not have reasonable grounds to arrest Boland on two points. First, the district judge stated Officer Lohse did not have personal knowledge that Boland was driving under the influence, but relied on the information radioed to him by Officer Scheele. This radio-relayed information, the District Court felt, could not be relied upon by Officer Lohse as facts and circumstances within his personal knowledge sufficient to arrest Boland for DUI. Second, the District Court in its findings of fact, indicated that without the radio-relayed information, nothing that Officer Lohse observed during his surveillance of the Boland vehicle would constitute reasonable grounds to arrest Boland for DUI. We find the District Court's reasoning in this matter to be

6

flawed.

"Reasonable grounds" are synonymous with "probable cause" in Montana. State v. Davis (1980), 190 Mont. 285, 289, 620 P.2d 1209, 1212.

This Court has often held an arresting officer may rely on information conveyed by a reliable third person or another officer in determining probable cause to arrest.

> [P]robable cause is to be evaluated by the courts on the basis of the collective information of the police rather than that of only the officer who performs the act of arresting.

Davis, at 290, 620 P.2d at 1212 (quoting State v. Shaw (Or.App. 1979), 473 P.2d 159, 161). See also, State ex rel. Kuhr v. Dist. Ct. (1928), 82 Mont. 515, 268 P. 501; State v. Ellinger (1986), 223 Mont. 349, 725 P.2d 1201; State v. Lee (1988), 232 Mont. 105, 754 P.2d 512.

In addition to the radio-relayed information provided by Officer Scheele, Officer Lohse also observed that Boland stumbled and had trouble maintaining his balance in the restaurant parking lot, that Boland had the odor of alcohol on his breath and admitted having just come from a bar, and that Boland failed two of the three sobriety tests.

We find that the arresting officer did have reasonable grounds to believe that Boland was driving under the influence of alcohol at the time of his arrest.

7

We reverse the District Court and remand for entry of an order consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

8

Justice John C. Sheehy, dissenting:

I dissent, and would affirm the District Court.

We are involved here with a civil proceeding. The findings of the District Court should be sustained by us unless they are clearly erroneous. Rule 52, M.R.Civ.P.

The District Court made the following findings of fact:

3. Officer Lohse followed Patrick Boland from Second Street and Central Avenue to the Hardee's restaurant on First Avenue North and Park Drive. During the time of surveillance by Officer Lohse, Patrick Boland operated his vehicle in a proper and legal manner.

4. The unrebutted testimony is that Patrick Boland's vehicle was legal and that Patrick Boland's manner of driving was at all times legal and there is no reasonable cause for arresting Patrick Boland.

The foregoing findings by the District Court Judge are supported by the evidence in the cause. The following colloquy occurred during the trial:

THE COURT: Before that, though, you had seen nothing yourself that warranted you arresting him?

THE WITNESS: Concerning his driving?

THE COURT: Yes.

THE WITNESS: That's correct. Other than just Officer Scheele advising me of the fact that he had observed this, and asked me to--I pulled in behind the vehicle, and by the time I got behind it we are into the 200 block, and just like he was turning on to Park Drive, and all of a sudden was into the Hardee's lot--

THE COURT: How many blocks did you follow him:

THE WITNESS: Approximately--it would be three blocks approximately.

THE COURT: And you didn't observe anything in those three blocks that could cause you to believe--

9

THE WITNESS: That's correct, I could not say I observed anything with the vehicle.

The pivotal question here is whether the arresting officer had any reason to make a stop and interrogate the defendant. He had no personal knowledge of any violation of the highway laws. The court gave its reasons for its decision, and they are proper, in the following:

> THE COURT: He saw him in physical control of the vehicle, and he was driving exactly like he was supposed to do. That's why we have laws, so we don't have officers arresting people when they are doing nothing. That's why we have the right to drive in this country. It is a privilege. And that's why we don't want officers stopping people in their cars when they have no reason to stop them.
>
> Now this officer observed this man driving, he saw nothing wrong with his driving. How would you like it if they stopped you? You might say you are sober and everything, it is just the inconvenience of being stopped. That's why we don't want people being stopped.
>
> This is a free country. We have our liberties. We don't want police officers stopping somebody when he doesn't have any cause to stop them.
>
> He observed this man driving, Officer Lohse said he was weaving, it was a snowy night and so on, and he had been weaving--he may have been tired or something. But when this officer got on his tail and followed him for two and three blocks there, he wasn't doing anything wrong . . .

The information radioed by Officer Scheele to Officer Lohse did not jibe with the actual observations made by the arresting officer. Officer Lohse did not have reasonable cause to stop Patrick Boland. As the District Court noted, the observation the officer made <u>after</u> the stop can not excuse the improper stop. Yet, it is the observations made by the officer after the stop upon

which this Court relies to reverse the District Court.  I would affirm.

_____
               Justice

11