No. 97-144

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

v.

KENT JAMES PRATT,

Defendant and Appellant.



APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

J. Dirk Beccari; Quane, Smith, Howard & Hull;
Missoula, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;
John Paulson, Assistant Attorney General;
Helena, Montana

Robert L. "Dusty" Deschamps, III, Missoula County
Attorney;
Robert L. Zimmerman, Deputy County Attorney;

Missoula, Montana


Submitted on Briefs: November 6, 1997

Decided:    December 16, 1997
Filed:


_____
Clerk


Justice Jim Regnier delivered the Opinion of the Court.

Kent James Pratt was charged by information on November 2, 1995, with the offenses of felony driving under the influence of alcohol, misdemeanor possession of more than one valid Montana driver's license, and misdemeanor violation of the provisions of a restricted driver's license. Pratt filed a motion to suppress evidence of his intoxication which had been obtained following the investigatory stop of his vehicle. Pratt also filed a motion to dismiss the charge for lack of jurisdiction. The Fourth Judicial District Court, Missoula County, denied both motions. Pratt entered into a plea agreement with the State in which he agreed to plead guilty to felony DUI and the State agreed to dismiss the two misdemeanor counts and make a specified sentencing recommendation. The District Court sentenced Pratt to a term of five years, with two years suspended, with the Department of Corrections, and recommended his placement in the intensive supervision program. Pratt reserved the right to appeal from the District Court's denial of his pretrial motions. Pratt appeals from the sentence and judgment of the District Court, and from the orders denying his motion to suppress and motion to

dismiss. We affirm.

The following issues are presented on appeal:

1. Did the District Court err in denying Pratt's motion to suppress evidence, in which Pratt argued that Officer Pastian did not have a particularized suspicion to justify an investigatory stop of Pratt's vehicle?

2. Did the District Court err in denying Pratt's motion to dismiss the felony DUI charge for lack of jurisdiction?

### FACTUAL AND PROCEDURAL BACKGROUND

The defendant's motion to suppress was submitted and decided without an evidentiary hearing. As a factual basis for his motion, however, Pratt used two police reports which he attached to the motion. The following facts are derived from the reports which were considered by the District Court.

At 2:09 a.m. on October 5, 1995, Officer Scott Pastian of the Missoula City Police Department received a police dispatcher's report of an intoxicated driver. The report related that the driver was operating a white Toyota Land Cruiser, license number resembling "GRIZZII" and traveling north on Van Buren Street from East Broadway. The complainant was Mike Lafournaise, the night manager of the Short Stop convenience store in Missoula.

Officer Pastian was traveling south on Van Buren Street when the dispatcher relayed the report with the description of the vehicle and license number. Officer Pastian saw Pratt's Toyota driving toward him on Van Buren Street and then turn onto Elm Street. Officer Pastian initiated a traffic stop. Subsequently, Pastian arrested Pratt for driving under the influence of alcohol, fourth offense; possession of more than one valid Montana driver's license; and violation of the provisions of a restricted driver's license.

Officer J. Pontrelli overheard the dispatch report about the

intoxicated driver and proceeded toward Van Buren Street. Upon hearing Pastian inform the dispatcher that he had stopped Pratt, Pontrelli drove to the Short Stop and talked to Lafournaise. Lafournaise described Pratt's actions and intoxicated condition while at the store.

Lafournaise related to Officer Pontrelli that he saw a white male, now known as the defendant, Kent Pratt, drive a 1991 white Toyota Land Cruiser into the store's gas pump lanes where he stopped and sat for awhile and then drove away onto Broadway. A short time later, Pratt returned to the Short Stop, parked again in the pump lane, and stayed in the vehicle for a few minutes. Pratt then exited the vehicle and staggered into the store to the bathroom. After coming out of the bathroom, he went to the beer cooler and stood in front of it as if he were going to purchase some beer. The store attendant then told Pratt that he could not purchase any beer since it was after 2:00 a.m. Pratt left the store, fumbled around in his vehicle, and finally drove away.

In reporting Pratt's actions at the Short Stop to the police, Lafournaise described the vehicle and its distinctive personalized license plate, and informed the dispatcher that Pratt was traveling north on Van Buren Street.

On November 2, 1995, Pratt was charged by information in the Fourth Judicial District Court, Missoula County, with violations of: (1) õ 61-8-401, MCA, DUI, a fourth lifetime offense, a felony; (2) õ 61-5-111, MCA, possession of more than one valid Montana driver's license, misdemeanor; and (3) õ 61-5-113, MCA, violation of provisions of a restricted driver's license, a misdemeanor.

Pratt has three prior convictions for DUI which occurred on June 10, 1985; March 7, 1989; and September 13, 1991.

On January 11, 1996, Pratt filed a motion to suppress the evidence of his

intoxication which had been obtained following the investigatory stop of his vehicle.  On February 6, 1996, the District Court denied Pratt's motion to suppress.

On March 8, 1996, Pratt filed a motion to dismiss the felony charge for lack of jurisdiction.  In that motion, Pratt argued that two of his prior DUI convictions should have been expunged from his record and, therefore, could not be used as a basis for a felony DUI prosecution.  Pratt also argued that, as applied to his prior DUI convictions, the 1995 amendments to the DUI sentencing statutes violated the constitutional prohibitions against ex post facto legislation.  On June 21, 1996, the District Court denied Pratt's motion to dismiss.

On October 7, 1996, Pratt entered a conditional plea of guilty, pursuant to õ 46-12-204(3), MCA, to the offense of felony DUI.  The State agreed to dismiss the two misdemeanor counts and make a specified sentencing recommendation.  Pratt reserved his right to appeal from the orders denying his motions to suppress and dismiss.

On November 22, 1996, the District Court sentenced Pratt to a term of five years, with two years suspended, with the Department of Corrections, and recommended his placement in the intensive supervision program.  The District Court's judgment was filed on December 9, 1996.

On February 6, 1997, Pratt filed a notice of appeal, and on February 7, 1997, the District Court entered an order staying the sentence pending final determination by this Court.

Pratt appeals from the sentence and judgment of the District Court, from the order denying his motion to suppress evidence, and from the order denying his motion to dismiss.                    ISSUE 1

Did the District Court err in denying Pratt's motion to

suppress evidence, in which
Pratt argued that Officer Pastian did not have a particularized suspicion to justify an
investigatory stop of Pratt's vehicle?

The standard of review for a district court's denial of a motion to suppress is
whether the court's findings of fact are clearly erroneous and whether those findings were
correctly applied as a matter of law.  State v. Flack (1993), 260 Mont. 181, 185-88, 860
P.2d 89, 92-94.

Pratt argues that the District Court erred in denying his motion to suppress and in
finding him guilty of driving under the influence of alcohol. Pratt claims that Officer
Pastian did not have enough information to form a particularized suspicion of criminal
activity to justify an investigatory stop pursuant to õ 46-5-401, MCA.

In Montana, the requirement of particularized suspicion was adopted in State v.
Gopher (1981), 193 Mont. 189, 631 P.2d 293, and is codified at õ 46-5-401, MCA,
which  provides:

Investigative stop.   In order to obtain or verify an account of the person's
     presence or conduct or to determine whether to arrest the person, a peace
     officer may stop any person or vehicle that is observed in circumstances
     that create a particularized suspicion that the person or occupant of the
     vehicle has committed, is committing, or is about to commit an offense.

In Gopher, this Court adopted the two-part test enunciated by the United States
Supreme Court in United States v. Cortez (1981), 449 U.S. 411, 101 S. Ct. 690, 66 L.
Ed. 2d 621, to evaluate whether the police have sufficient cause or a "particularized
suspicion" to stop a person.  In asserting that a police officer had the particularized
suspicion to make an investigatory stop, the State has the burden

to show:
(1) objective data from which an experienced officer can make certain
inferences; and (2) a resulting suspicion that the occupant of a certain
vehicle is or has been engaged in wrongdoing or was a witness to criminal
activity.

Gopher, 193 Mont. at 194, 631 P.2d at 296.

Whether a particularized suspicion exists is a question of fact which depends on
the totality of circumstances. State v. Reynolds (1995), 272 Mont. 46, 899 P.2d 540. In
evaluating the totality of the circumstances, a court should consider the quantity, or
content, and quality, or degree of reliability, of the information available to the officer.
Alabama v. White (1990), 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d
301, 309.

In this case, both Pratt and the State appropriately focus their arguments on the
nature  of the information provided by the citizen informant and the role it played in
forming Pastian's particularized suspicion in justifying the investigative stop of Pratt's
vehicle.  Pratt argues that the citizen informant who provided the information to the
Missoula City Police Department was unknown to Pastian before he initiated the stop of
his vehicle.  Therefore, Pratt contends Pastian could not have assessed the reliability of
the informant's information and rely on that information in forming a particularized
suspicion to justify the stop.  Pratt also argues that the detailed information establishing
the foundation of Lafournaise's opinion was provided to Officer Pontrelli after Pastian
stopped Pratt.  Furthermore, Pratt asserts that Pastian made no observation regarding his
driving before stopping him.  Thus, without assessing the reliability of the informant or

observing any erratic driving on Pratt's part, Pastian possessed no objective data upon
which to base his stop of Pratt's vehicle.

The State concedes that Pastian's report does not indicate that the officer himself
observed any erratic driving prior to the investigatory stop of Pratt's vehicle.  However,
the State counters by arguing that the information provided by the citizen informant about
Pratt to the Missoula City Police Department was sufficient in itself to justify the stop.

This Court has held that an arresting officer may rely on information conveyed by
a reliable third person, including an anonymous citizen informant, in forming the basis
for a particularized suspicion to justify an investigative stop. See Boland v. State (1990),
242 Mont. 520, 792 P.2d 1; State v. Ellinger (1986), 223 Mont. 349, 725 P.2d 1201.
For example, we have stated that a citizen report of a DUI, the reported vehicle observed
halfway off the road, and the vehicle pulling away when an officer approached  is
sufficient to establish a particularized suspicion.  State v. Sharp (1985), 217 Mont. 40,
702 P.2d 959.  Likewise, two anonymous telephone calls corroborated by officers and
evidence of excessive speed were sufficient grounds for a justifiable stop.  State v. Shaffer
(1987), 227 Mont. 221, 738 P.2d 491.  In both Sharp and Shaffer, unlike this case, the
information provided by the citizen informant was corroborated by independent
observation of wrongdoing or illegality by the officer in order to meet the particularized
suspicion standard.

Not surprisingly, both parties refer to and place great emphasis on our recent
decision in State v. Lee (Mont. 1997), 938 P.2d 637, 54 St. Rep. 401.  Lee involved the
investigatory stop of a vehicle after a report from an anonymous citizen informant was
relayed to the arresting officer.  In Lee,

the anonymous caller stated that she "believed Lee was under the influence of alcohol and speeding."   This statement, along with a description of the car and the direction it was heading, was all the information that was provided to the dispatcher.  The dispatcher relayed this information to Officer Collins.  The caller did not provide the dispatcher with any basis for her belief that Lee was driving under the influence of alcohol or speeding.  At the time of the call, the informant did not state whether she had personally observed Lee drinking or that he was speeding or driving erratically.  The informant merely believed that Lee was speeding and under the influence of alcohol.

Before Officer Collins stopped Lee, he did not have any contact with the informant to assess whether the information provided was reliable or had any basis in fact.  Officer Collins saw a car matching the informant's description traveling north on the Fort Peck highway and turned around to follow it.  Collins testified that the car was not speeding, weaving, or swerving.  When the patrol car accelerated to get behind the vehicle driven by Lee, Lee slowed down to 35 miles per hour.  Outside of this deceleration, Officer Collins observed no violations of the law or driving anomalies.  Lee did not exhibit patterns consistent with a person driving while under the influence of alcohol; there was no evidence of erratic driving.

Lee, 938 P.2d at 640, 54 St. Rep. at 403 (emphasis added).

In Lee, the anonymous citizen informant provided the dispatcher with little

information except a statement of opinion, a description of the vehicle, and the general direction of travel. Upon locating Lee's vehicle, the officer initiated an investigatory stop before first assessing whether the information was reliable or had any basis in fact and, second, corroborating the information with any observation of illegal activity or indication of impaired or erratic driving. Based upon these facts, we held that a citizen informant's opinion which is not supported by either the basis for such belief or by the officer's personal observations cannot be sufficient to form a particularized suspicion. Lee, 938 P.2d at 640, 54 St. Rep at 403.

Pratt relies on Lee in arguing that Pastian did not have sufficient information to form a particularized suspicion to justify an investigatory stop of his vehicle. Pratt contends that the circumstances surrounding the investigatory stop of his vehicle are identical to the facts in Lee, in that the tip from the citizen informant was not reliable and that the officer did not observe any erratic or impaired driving.

The State argues that Lee is factually distinguishable and does not control the resolution of Pratt's case. The State contends that the citizen informant was not anonymous, but had identified himself to the dispatcher. Furthermore, the citizen informant also indicated that his report was based upon his own observations that Pratt was drunk and driving.

Citizen informants can provide useful information and play an important role in law enforcement. At the same time, however, it is imperative to recognize the potential for abuse if the information provided by a citizen informant is not reliable. The United States Supreme Court has recognized the problems associated with tips from citizen informants:

Informants' tips, like all other clues and evidence coming to

a policeman
on the scene may vary greatly in their value and reliability. One simple
rule will not cover every situation.  Some tips completely lacking in indicia
of reliability, would either warrant no police response or require further
investigation before a forcible stop of a suspect would be authorized.

Adams v. Williams (1972), 407 U.S. 143, 147, 92 S. Ct. 1921, 1924, 32 L. Ed. 2d 612,
617-18.
Recognizing the frequency in which we encounter issues involving citizen
informants, it is appropriate that we provide further guidance on the proper use of
information given by citizen informants.  We find the analysis as set forth by the Oregon
Court of Appeals in State v. Villegas-Varela (Or. 1994), 887 P.2d 809, useful in
evaluating a citizen informant's report and adopt this approach for Montana.
In Villegas-Varela, the defendant appealed from a denial of his motion to suppress.
The police officer at the suppression hearing testified that he received a dispatch that an
anonymous caller reported an "intoxicated driver operating a small red vehicle with four
subjects in it.  The vehicle was driving erratically all over the road."  Although the caller
provided the license number, he did not give his location, the location of the car, the
direction of travel or a description of  any of the occupants.  The caller also did not give
his name or telephone number.  More than an hour later, the arresting officer observed
the defendant's vehicle and followed it for several blocks without observing any traffic
infraction.  After following the car into a parking lot, the officer identified the license
plate and matched it to the one provided by the dispatcher.  He then arrested the

defendant for driving under the influence of intoxicants, giving false information to a
police officer, and driving with a suspended license.

On appeal, the defendant argued that the trial court erred in denying his motion
to suppress, contending that the arresting officer lacked reasonable suspicion to justify the
stop because the informant was anonymous and not sufficiently reliable. In reversing the
trial court, the Oregon Court of Appeals stated when reasonable suspicion is based solely
on a citizen informant's report, that report must contain some indica of reliability.
Villegas-Varela, 887 P.2d at 810. The court identified three factors that are important
in determining the reliability of a citizen informant's report.

The first factor is whether the citizen informant identifies himself to law
enforcement and thus exposes himself to criminal and civil liability if the report is false.
Villegas-Varela, 887 P.2d at 810. Under this factor, a tip may be considered more
reliable if the informant provides his or her name to law enforcement authorities or
delivers the information to the officer in person. The second factor is whether the report
is based on the personal observations of the informant. Villegas-Varela, 887 P.2d at 811.
The Oregon court recognized that:
An officer may infer that the information is based on the informant's
personal observations if the information contains sufficient detail that

"it is apparent that the informant had not been fabricating
[the] report out of whole cloth . . . [and] the report [is] of the
sort which in common experience may be recognized as
having been obtained in a reliable way . . . ."

Villegas-Varela, 887 P.2d at 811 (quoting Spinelli v. United States (1969), 393 U.S. 410,
417-18, 89 S. Ct. 584, 589-90, 21 L. Ed. 2d 637, 644). The third

factor is whether the
officer's own observations corroborated the informant's
information.  Villegas-Varela,
887 P.2d at 811.  Corroboration of the tip occurs when the officer
either observes illegal
activity or finds the person, the vehicle, and the vehicle's
location substantially as
described by the informant.

In applying these factors to the instant case, the report by
citizen informant
Lafournaise about Pratt's condition can be viewed as reliable and,
therefore, provided
Pastian with a particularized suspicion justifying his
investigatory stop of Pratt's vehicle.
First, Lafournaise identified himself during the 911 call and was
subjected to a full
interview by another officer soon after making the report.
Lafournaise, therefore, was
exposed to not only civil liability, but also criminal prosecution
pursuant to õ 45-7-205,
MCA, if the report was fabricated.  Second, although we do not have
a transcript of
Lafournaise's call to the dispatcher, we can infer from the record
that Lafournaise was
reporting his personal observations of Pratt's activities that led
him to believe that Pratt
was intoxicated.  He provided the dispatcher with information
indicating that he was the
night manager of the Short Stop and thus in a position to have
observed Pratt.
Furthermore, he provided information detailing the vehicle
description, the direction the
vehicle was traveling, and the vehicle's personalized license plate
number.  Certainly a
report given by an on-duty manager of  a retail establishment is
"of the sort which in
common experience may be recognized as having been obtained in a
reliable way."
Finally, in accordance with the third factor,  the report was
sufficiently corroborated
when Pastian observed the described vehicle within a short period
of time, traveling in
the direction and on the same street indicated by Lafournaise.

Therefore, we conclude that Pastian had a particularized suspicion to initiate the investigatory stop of Pratt.

Pratt also argues that Pastian, as the officer who initiated the investigatory stop, must have personally assessed the reliability of the informant's tip before making the stop.  Pratt finds fault with Pastian making the stop without having spoken with the informant or, at least, having any information regarding the circumstances which led to the report, the person who made the report, the manner of Pratt's driving, the facts relating to Pratt's level of impairment, or the basis for the informant's belief in making the report.

The United States Supreme Court has held that an officer who is unaware of the factual basis for particularized suspicion, may make an investigatory stop upon a directive or request for action from another officer or law enforcement agency.  United States v. Hensley (1985), 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604.  See also Whitley v. Warden (1971), 401 U.S. 560, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (an officer who is unaware of the factual basis for probable cause, may make an arrest upon a directive from another officer with probable cause).  In such a situation, the directing officer's knowledge of underlying facts and circumstances is imputed to the acting officer.  The rationale for this rule is that the officer is entitled to assume that whoever issued the directive or request had particularized suspicion.  However, in the absence of such a directive or request, information held by other officers but not communicated to the acting officer is not imputed to the acting officer. Whitley, 401 U.S. at 568-69.

The Ninth Circuit has concluded that although an officer who issues a wanted bulletin must have particularized suspicion sufficient to justify

an investigatory stop, the officer who acts in reliance on the bulletin is not required to have personal knowledge of the evidence creating a particularized suspicion. United States v. Robinson (9th Cir. 1976), 536 F.2d 1298 (holding that an officer who relied on a radio dispatch report in making an investigatory stop of a vehicle did not have a particularized suspicion when the dispatcher did not have a factual foundation for a particularized suspicion before relaying the information to the officer). The Ninth Circuit noted "effective law enforcement cannot be conducted unless police can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." Robinson, 536 F.2d at 1299.

In Gopher, we stated that facts known to one officer at the time he directed another officer to make an investigatory stop could appropriately form a basis for particularized suspicion. See Gopher, 193 Mont. at 191-93, 631 P.2d at 294-96. Likewise, in Boland, we held that an arresting officer may rely on information conveyed by another officer in determining probable cause to arrest. Boland, 242 Mont. at 525, 792 P.2d at 3.

We therefore conclude that Pratt's argument that Pastian must personally assess the reliability of the citizen informant's tip is unpersuasive. Pastian, as the acting officer, could reasonably rely on information relayed to him by the dispatcher for particularized suspicion justifying an investigatory stop of Pratt's vehicle. Pastian observed Pratt's vehicle mere moments after receiving the report from the dispatcher. Under these circumstances, we cannot conclude that Pastian was compelled to corroborate the dispatcher's report by following Pratt's vehicle and waiting for a

traffic violation to occur.  Under the factually driven totality of the circumstances test, Pastian appropriately relied on the dispatcher's report.  Although he did not observe any erratic driving, Pastian sufficiently corroborated the information relayed by the dispatcher when he located Pratt, within moments of the  dispatch, driving a white Toyota Land Cruiser with the license number as reported by Lafournaise, traveling in the direction reported by Lafournaise--north on Van Buren Street.

In adopting Villegas-Varela, we note that our decision in Lee would remain unchanged under the three-factor analysis.  First, in Lee, the citizen informant was anonymous.  Therefore, the informant did not subject herself to criminal and civil liability for making a false report.  Second, due to the limited information that the informant provided, the dispatcher or officer could not have known if that report was based on the informant's own personal observations.  Third, the officer did not corroborate the report by observing any illegal activity or impaired or erratic driving that formed the basis of the report before making the investigatory stop.

As stated above, the issue of whether or not a particularized suspicion exists is factually driven and depends on the totality of circumstances.  Information from a tip provided by a citizen informant, whether identified or anonymous, may provide the basis for an investigatory stop.   The tip must be analyzed under the three factors that we adopt from Villegas-Varela to determine its reliability.  Generally, tips that are less reliable, such as those provided by anonymous informants, necessarily require more corroboration on the part of the investigating officer in order to establish a particularized suspicion.  In situations such as Lee, where the tip was anonymous and lacked any foundation for the

informant's opinion, the officer must corroborate the tip by observing some behavior on the part of the driver, either illegal or indicative of some impairment, that alerts the officer to a possible violation.

In Pratt's case, for reasons discussed above, the tip was more reliable. Lafournaise identified himself to the dispatcher and stated that the tip was based on his own personal observations of Pratt's activities that led him to believe that Pratt was driving while intoxicated. Corroboration of the tip occurred almost immediately after the dispatcher relayed the tip when Pastian came upon Pratt's vehicle as described and initiated the investigatory stop. Here, the quality of the information or reliability was high. Thus, the tip corroborated by the officer when he found the vehicle as described was sufficient to raise a particularized suspicion, even though the officer did not observe any illegal or impaired driving on Pratt's part before the investigatory stop.

Because Officer Pastian, acting under the facts imparted to him by the dispatcher, had a particularized suspicion that Pratt was driving under the influence of alcohol, we therefore hold that the investigatory stop of Pratt's vehicle was justified pursuant to õ 46-5-401, MCA.

Furthermore, we adopt the analysis of Villegas-Varela and conclude that the District Court did not err by denying Pratt's motion to suppress evidence obtained as a result of Officer Pastian's investigatory stop.

ISSUE 2

Did the District Court err in denying Pratt's motion to dismiss the charge of felony DUI, fourth offense, for lack of jurisdiction?

A district court's grant or denial of a motion to dismiss in a criminal case is a question of law which we review de novo. State v. Brander (1996), 280 Mont. 148, 150-

51, 930 P.2d 31, 33.

Pratt argues that the District Court lacked jurisdiction because two of his prior DUI convictions should not have been considered in enhancing the current DUI charge from a misdemeanor DUI to a felony DUI, fourth offense.  Pratt further argues that the 1995 amendments to õ 61-8-714, MCA, constitute an ex post facto law in violation of Article II, Section 31, of the Montana Constitution, and Article I, Section 10, of the United States Constitution.

The 1995 Montana Legislature enacted revisions to Montana's laws prohibiting driving after having consumed intoxicating amounts of alcohol.  See 1995 Mont. Session Laws, Chs. 447, 546, and 567.  Among other changes, the Legislature created a felony sanction for repetitive DUI offenders.  A new subsection, õ 61-8-714(4), MCA (1995), provided in part:

On the fourth or subsequent conviction, the person is guilty of a
felony offense and shall be punished by imprisonment for a term of not less
than 1 year or more than 10 years and by a fine of not less than $1,000 or
more than $10,000.

In accordance with this new subsection, the Legislature amended õ 61-8-714(6), MCA (formerly subsection (5)), as follows:

For the purpose of determining the number of convictions under this
section, "conviction" means a final conviction, as defined in 45-2-101, in
this state, conviction for a violation of a similar statute in another state, or
a forfeiture of bail or collateral deposited to secure the defendant's
appearance in court in this state or another state, which forfeiture has not
been vacated.  An offender is considered to have been

previously convicted
for purposes of sentencing if less than 5 years have elapsed between the
commission of the present offense and a previous conviction, unless the
offense is the offender's fourth or subsequent offense, in which case all
previous convictions must be used for sentencing purposes.  If there has not
been an additional conviction for an offense under this section for a period
of 5 years after a prior conviction under this section, then all records and
data relating to the prior convictions are confidential criminal justice
information, as defined in 44-5-103, and public access to the information
may only be obtained by district court order upon good cause shown.


First, we address Pratt's argument that the 1995 amendments to õ 61-8-714, MCA,
increase the punishment for his prior convictions and thus constitute an ex post facto law
in violation of Article II, Section 31, of the Montana Constitution, and Article I, Section
10, of the United States Constitution.
In Brander, we addressed the very same ex post facto argument concerning the
1995 amendments to õ 61-8-714, MCA.  We held that the application of the 1995
amendments did not violate the ex post facto clauses of the Montana and United States
Constitutions.  Brander, 280 Mont. 148, 930 P.2d 31.  The 1995 amendments neither
punish Pratt for his previous convictions nor increase the penalty for any prior conviction
of DUI.  See Brander, 280 Mont. at 154,  930 P.2d at 35.  The enhancement of Pratt's
present DUI to felony status is the punishment for a fourth DUI.  In making a fourth DUI
a felony, the Legislature chose to punish repetitive behavior more severely and does not

act to impose a new penalty for a prior conviction.

Next, Pratt contends that the convictions of June 10, 1985, and March 7, 1989, no longer exist based upon a repealed expungement provision which was in effect as part of the DUI penalty statute from 1981 to 1989.  He argues that 1985 and 1989 convictions have either been removed from Pratt's record for purposes of determining the number of convictions or have been expunged completely.

At the time of Pratt's first two convictions, õ 61-8-714(5), MCA (1985), provided in part:

An offender is considered to have been previously convicted for the
purposes of this section if less than 5 years have elapsed between the
commission of the present offense and a previous conviction. If there has
been no additional conviction for an offense under this section for a period
of 5 years after a prior conviction hereunder, then such prior offense shall
be expunged from the defendant's record.

In 1989, the Montana Legislature amended õ 61-8-714(5), MCA, to provide that if, after five years, a defendant had no additional DUI convictions, the defendant's earlier DUI conviction  would no longer be expunged from his record, but rather the information relating to the prior DUI conviction would become confidential criminal justice information.  Brander, 280 Mont. at 152, 930 P.2d at 33-34.

In Brander, we held that under the expungement provision any DUI conviction that occurred before October 1, 1989, and was followed by at least five years without a subsequent conviction, was expunged from a defendant's record and could not be counted as a prior conviction for felony DUI.  See Brander, 280 Mont. at 155-57, 930 P.2d at 35-37.  Furthermore, in reaffirming Brander, this Court held that

any pre-1989 DUI convictions which are followed by additional DUI convictions within five years are never eligible for expungement. State v. Beckman (Mont. 1997), 944 P.2d 756, 54 St. Rep 77.

Thus, under Brander and Beckman, Pratt's 1985 DUI conviction was not eligible for expungement from his record because less than five years had passed before his next DUI conviction in 1989. Likewise, Pratt's 1989 DUI conviction could not be expunged from his record because he was subsequently convicted for DUI in 1991, less than the five years required for expungement under the statute.

We conclude that the District Court did not err in denying Pratt's motion to dismiss based on ex post facto grounds. Also, we conclude that the District Court correctly considered all of Pratt's prior convictions as the basis for felony DUI prosecution.

Affirmed.


/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE
/S/ JAMES C. NELSON
/S/ KARLA M. GRAY
/S/ WILLIAM E. HUNT, SR.