No. 98-135

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 237N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

BRUCE ALFRED RUDD,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial
District,

In and for the County of Missoula,

Honorable Douglas G. Harkin, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Mark McLaverty, Public Defender's Office, Missoula, Montana

For Respondents:

Honorable Joseph P. Mazurek, Attorney General; Jennifer Anders,

Assistant Attorney General, Helena, Montana

Robert L. Deschamps, County Attorney; Robert L. Zimmerman,

Deputy County Attorney, Missoula, Montana

Submitted on Briefs: August 27, 1998

Decided: September 29, 1998

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶ **Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

¶ **Bruce Alfred Rudd (Rudd) appeals the ruling of the Fourth Judicial District Court, Missoula County, denying his motion to suppress the State's evidence against him on a charge of felony DUI, fourth offense. We affirm the ruling of the District Court.**

ISSUE

¶ **Did the District Court err in denying Rudd's motion to suppress the State's evidence on the grounds that the arresting officer lacked a particularized suspicion to**

stop and detain Rudd's motor vehicle?

## BACKGROUND

¶ On April 25, 1997, at approximately 10:30 p.m., the 911 dispatcher for Missoula County received a call from a citizen informer who was driving behind what she reported to be a drunk driver headed south down Highway 93. The caller gave the dispatcher her name, address and telephone number, and a statement of the driver's activities as she observed them. She reported seeing the driver veer off the edge of the road and sideswipe a reflector, almost drive into a ditch, cross the center line three times, and cross the fog line ten to twenty times. The citizen informer later called back to inform the dispatcher that the driver had stopped his vehicle at the Evaro Bar.

¶ The dispatcher relayed the information from the caller to Officer Monzon, who found the car described by the caller at the Evaro Bar. As the officer was approaching the vehicle, the driver attempted to back out of a parking spot. Officer Monzon detained the driver and asked him to step out of the vehicle, at which point he noted that the driver's balance was unsteady and his speech slurred. The driver was asked to perform the Horizontal Gaze Nystagmus maneuver, during which Officer Monzon observed signs that the subject was under the influence of alcohol. The results of a preliminary breath test also indicated the influence of alcohol on the driver.

¶ The driver of the vehicle, now known to be Bruce Rudd, was arrested for operating a vehicle while under the influence of alcohol. Rudd filed a motion before the District Court to suppress the evidence related to his DUI charge on the grounds that the information provided by the citizen informant was not sufficient to create a particularized suspicion which would justify his detention by Office Monzon. It is from that ruling that Rudd appeals.

## STANDARD OF REVIEW

¶ Our standard of review of a trial court's grant of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Roberts* (1997), 284 Mont. 54, 56, 943 P.2d 1249, 1250; *State v. Lee* (1997), 282 Mont. 391, 393, 938 P.2d 637, 639. A court's

findings are clearly erroneous if they are not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed. *Interstate Prod. Credit Ass'n v. DeSaye* (1981), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

## DISCUSSION

¶ **Did the District Court err in denying Rudd's motion to suppress the State's evidence on the grounds that the arresting officer lacked a particularized suspicion to stop and detain Rudd's motor vehicle?**

¶ **The Fourth Amendment's protection against unreasonable searches and seizures applies where a motor vehicle is stopped for the purpose of investigation by law enforcement officers.** *Reid v. Georgia* **(1980), 448 U.S. 438, 440, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890;** *Lee***, 282 Mont. at 394, 938 P.2d at 639. However, a law enforcement officer may briefly detain and question an individual without probable cause if the officer suspects the individual has committed or is in the process of committing an offense.** *Terry v. Ohio* **(1968), 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889. In Montana, the guidelines for executing an investigative stop of a motor vehicle are codified at § 46-5-401, MCA, which reads:**

> **Investigative stop.** In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

¶ **A determination as to whether there is a "particularized suspicion" justifying the stop must be made in light of the totality of the circumstances.** *State v. Gopher* **(1981), 193 Mont. 189, 192, 631 P.2d 293, 295. "In evaluating the totality of the circumstances, a court should consider the quantity, or content, and quality, or degree of reliability, of the information available to the officer."** *State v. Pratt* **(Mont. 1997), 951 P.2d 37, 40, 54 St.Rep. 1349, 1351 (citing** *Alabama v. White* **(1990), 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301).**

¶ This Court has recognized that an arresting officer may rely on information provided by a citizen informant in forming the basis of a particularized suspicion for an investigative stop. *Pratt*, 951 P.2d at 41, 54 St.Rep. at 1351; *Lee*, 282 Mont. at 395, 938 P.2d at 640. Information provided by a citizen informant is presumptively reliable. *State v. Sharp* (1985), 217 Mont. 40, 46, 702 P.2d 959, 962. However, information provided by a citizen informant may not be used if the report is completely lacking any indicia of reliability. *Pratt*, 951 P.2d at 42, 54 St.Rep. at 1352 (quoting *Adams v. Williams* (1972), 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612). Indicia of reliability include whether the informant has identified himself and thus exposed himself to potential liability for false reports; whether the report is based on the personal observations of the informant; and whether the officer's own observations corroborate the informant's information. *Pratt*, 951 P.2d at 43, 54 St. Rep. at 1353. "Corroboration of the tip occurs when the officer either observes illegal activity or finds the person, the vehicle, and the vehicle's location substantially as described by the informant." *Pratt*, 951 P.2d at 43, 54 St.Rep. at 1353.

¶ Rudd argues that the call placed by the citizen informer in this case was not reliable, because the Missoula County 911 dispatch office cannot verify the origin of cellular phone calls with its electronic caller-identification system. Although the informant in this case provided her name, address and telephone number to the 911 dispatcher, it is Rudd's contention that the identification of the caller is not established unless the call can be traced by a caller-ID system. We find this argument unpersuasive.

¶ While caller-ID can be a helpful tool in establishing the identity of persons placing calls with the 911 service, its usefulness is necessarily limited, because it only traces calls to the originating telephone; it cannot affirmatively establish the identity of the person calling. To require electronic caller-ID verification as a conclusive form of caller identification whenever a citizen informant places a call to law enforcement authorities would preclude reliance on a substantial number of otherwise legitimate "tips," including calls made from public pay phones, courtesy telephones, telephones in a large business, mobile and cellular telephones. Therefore, we conclude that the caller in this instance provided sufficient information in the form of her name, address and telephone number to presumptively establish her identity, and that the inability of the 911 dispatcher to electronically trace the source of the call is not determinative in establishing a caller's identity.

¶ Rudd also argues that the information provided by the citizen informer was not a proper basis of Officer Monzon's particularized suspicion, because Officer Monzon did not speak to the informant personally and the dispatcher who relayed the information to Officer Monzon is not a member of a law enforcement agency upon whose judgment Officer Monzon could rely. However, the record reveals that the detailed information provided by the informant regarding her observations of Rudd's vehicle was relayed to Officer Monzon by the 911 dispatcher. Therefore, Officer Monzon was not relying on the dispatcher's judgment in arriving at the particularized suspicion of the incapacity of the driver, but was exercising his own judgment as to the meaning and effect of the information relayed to him.

¶ Finally, Rudd argues that the fact that Officer Monzon discovered Rudd's vehicle essentially as the caller had described it is not, by itself, sufficient to corroborate the caller's information. We disagree. As we pointed out in *Pratt*, where the identity of the caller is known and the information is provided in some detail based on the caller's personal observations, the need for extensive corroboration is diminished.

> Lafournaise identified himself to the dispatcher and stated that the tip was based on his own personal observations of Pratt's activities that led him to believe that Pratt was driving while intoxicated. Corroboration of the tip occurred almost immediately after the dispatcher relayed the tip when Pastian came upon Pratt's vehicle as described and initiated the investigatory stop. Here, the quality of the information or reliability was high. Thus, the tip corroborated by the officer when he found the vehicle as described was sufficient to raise a particularized suspicion, even though the officer did not observe any illegal or impaired driving on Pratt's part before the investigatory stop.

*Pratt*, 951 P.2d at 44, 54 St.Rep. at 1354.

¶ Because there is substantial evidence in the record to support the District Court's finding that Officer Monzon possessed a particularized suspicion sufficient to justify an investigatory stop of Rudd's vehicle based on reliable information provided by a citizen informant, and the finding is not otherwise clearly erroneous, we will not

**disturb the ruling of the District Court in denying Rudd's motion to suppress.**

**¶ Affirmed.**

/S/ J. A. TURNAGE

We concur:

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER