No. 98-440

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 1999 MT 300N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

GEOFFREY MORRISON,

Defendant and Appellant.

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

The Honorable Roy Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Torger Oaas, Lewistown, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Cregg Coughlin, Assistant Attorney General, Helena, Montana; Thomas P. Meissner, Fergus County Attorney, Lewistown, Montana

_____

Submitted on Briefs: June 10, 1999

Decided: December 6, 1999

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

2. ¶ Geoffrey Morrison (Morrison) was charged by information on September 27, 1997, with the offense of driving under the influence of alcohol. Morrison filed a motion in district court to suppress the evidence of his offense on the grounds the arresting officer did not have a particularized suspicion to make the traffic stop and therefore the subsequent arrest was unlawful. On April 14, 1998, the Tenth Judicial District Court, Fergus County, denied Morrison's motion to suppress and issued an

order to that effect. On June 10, 1998, Morrison pleaded guilty to the DUI charge and was sentenced to 24 hours in jail, a fine of $350, $20 in fees, and completion of the ACT program for that offense. Morrison reserved his right to appeal the District Court's denial of his pretrial motion. Morrison's sentence was stayed pending this appeal from the District Court's order. We affirm.

Morrison presents the following issue on appeal:

2. ¶ Did Patrolman Mantooth have particularized suspicion to stop Morrison's vehicle?

## FACTUAL AND PROCEDURAL BACKGROUND

3. ¶ At 10:55 p.m. the dispatcher at the Fergus County Sheriff's Office received a phone call from an informant, a Mr. Rick Jones, (Jones) giving his name, address and telephone number to the dispatcher. At 10:58, Jones called again giving the dispatcher the license plate number of Morrison's vehicle. In both calls, Jones described extremely erratic driving by Morrison, to the effect that he was swerving and weaving on the roadway. Patrolman Mantooth (Mantooth) who was at the Fergus County Sheriff's Office at the time the calls were made, left to intercept Morrison on the truck bypass route into Lewistown.

4. ¶ Mantooth passed Morrison's vehicle just north of Lewistown, identified it by its license plate number, stopped it without observing evidence of Morrison's intoxicated condition, and subsequently arrested Morrison for DUI.

## STANDARD OF REVIEW

5. ¶ The standard of review for a district court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Pratt* (1997), 286 Mont. 156, 160-161, 951 P.2d 37, 40 (citing *State v. Flack* (1993), 260 Mont 181, 185-188, 860 P.2d 89, 92-94).

## DISCUSSION

6. ¶ Morrison argues that Mantooth did not have sufficient particularized suspicion to stop Morrison's vehicle based solely on a citizen informant's telephone tips. The

facts surrounding Morrison's stop are much like the facts of the controlling case in this area, *State v. Pratt,* in which we held that a citizen informant's tip may provide the basis for an investigatory stop. Morrison does not challenge the District Court's findings of fact, nor does he claim that they were applied incorrectly as a matter of law. Morrison's sole objective in bringing this case appears to be for this Court to overrule its holding in *Pratt.* We decline to do so.

7. ¶ In *Pratt,* an informant called Missoula police to report a drunk driver. He included in his description the color, make, model, license plate number and direction of travel of the vehicle. A Missoula police officer who saw Pratt's vehicle driving toward him noticed the vehicle matched the informant's description, initiated a traffic stop, and eventually arrested Pratt for DUI. We held that the officer, who had not personally observed behavior by Pratt which would indicate his intoxicated condition, had sufficient particularized suspicion to initiate the investigatory stop based on the informant's tip. *Pratt*, 286 Mont. at 160, 951 P.2d at 44.

8. ¶ When circumstances create a particularized suspicion that a person is committing an offense, a peace officer may stop the person or the vehicle containing the person to determine whether to arrest the person. *State v. Lafferty*, 1998 MT 247, ¶ 9, 291 Mont. 157, ¶ 9, 967 P.2d 363, ¶ 9. See §46-5-401, MCA.

In asserting that a police officer had the particularized suspicion to make an investigatory stop, the State has the burden to show: '(1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal activity'.

*Pratt,* 286 Mont at 161, 951 P.2d at 40 (citing *State v. Gopher* (1981), 193 Mont. 189, 194, 631 P.2d 293, 296). Whether a particularized suspicion exists is a question of fact which depends on the totality of the circumstances. *Pratt,* 286 Mont. at 161, 951 P.2d at 40 (quoting *State v. Reynolds* (1995), 272 Mont. 46, 899 P.2d 540). "[A]n arresting officer may rely on an informant's tip, including that of an anonymous informant, if conveyed by a reliable third person, in forming the basis for a particularized suspicion to justify an investigative stop." *Pratt*, 286 Mont. at 162, 951 P.2d at 41 (citing *Boland v. State* (1990), 242 Mont. 520, 792 P.2d 1 (overruled on other grounds)). See *State v. Ellinger* (1986), 223 Mont. 349, 725 P.2d 1201.

9. ¶ The basis for Morrison's argument that such a tip is insufficient to form a particularized suspicion to justify an investigative stop is that "[a] telephone

informant can perpetuate all kinds of havoc on innocent motorists and hide between [sic] the protection of telephone anonymity." We find Morrison's argument unpersuasive.

10. ¶ In adopting the Oregon Court of Appeals' three-part-test in *State v. Villegas-Varela* (1994),132 Or.App. 112, 887 P.2d 809, for evaluating a citizen informant's report, we carefully considered the issue of the reliability of such informant tips.

Citizen informants can provide useful information and play an important role in law enforcement. At the same time, however, it is imperative to recognize the potential for abuse if the information provided by a citizen informant is not reliable.

*Pratt,* 286 Mont. at 164, 951 P.2d at 42.

11. ¶ The three-part-test this court adopted in *Pratt* is 1) whether the citizen informant identified himself to the authorities and thus exposed himself to civil and criminal liability if the report is false; 2) whether the report is based upon the citizen informant's personal observations; and 3) whether the officer's own observations corroborated the informant's information. *State v. Roberts*, 1999 MT 59, ¶17, 293 Mont. 476, ¶17, 977 P.2d 974, ¶17 (citing *Pratt*, 286 Mont. at 165, 951 P.2d at 42-43).

12. ¶ The State contends that the citizen informant's report was reliable because Jones identified himself to law enforcement, his report was based on his own observations, and Officer Mantooth found the vehicle substantially as described by Jones, i.e. in the location, driving in a direction, at a time as Jones had described.

13. ¶ We agree with the State that the elements of the Pratt test are satisfied. Jones gave his name, address, and telephone number when reporting information about Morrison's erratic driving, thereby exposing himself to civil and criminal liability if the report was false. He also gave Morrison's license plate number and stated that the driver of the vehicle was "weaving on the road". Jones personally made these observations while driving behind Morrison's vehicle on the highway.

14. ¶ Based on the above reasoning, we agree with the State that Morrison offers no sound reasoning for reversing the decision in Pratt.

15. ¶ We hold that based on an informant's tips, Officer Mantooth had sufficient information to form the basis for particularized suspicion to justify an investigative stop of Morrison's vehicle.

16. ¶ Affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

Justice Terry N. Trieweiler dissenting.

18. ¶ I dissent from the majority's conclusion that Patrolman Kelly Mantooth had sufficient particularized suspicion to make an investigatory stop of the vehicle being operated by Rick Jones on September 27, 1997. Furthermore, if we have now reached the point that our decision in *State v. Pratt* (1997), 286 Mont. 156, 951 P.2d 37 can be interpreted to allow an investigatory stop of a vehicle based on nothing more than a citizen informant's tip, then I conclude that *State v. Pratt* flies in the face of the statutory requirements for an investigative stop, not to mention the constitutional right to be free from unreasonable searches and seizures and I would, therefore, reverse that decision.

19. ¶ Section 46-5-401, MCA, provides as follows:

In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

20. ¶ The facts in this case are undisputed. Neither Officer Mantooth nor any other law officer observed any circumstances about Morrison's operation of his vehicle that created a particularized suspicion that Morrison was committing an offense.

21. ¶ We discussed the application of § 46-5-401, MCA in a non-motor vehicle context in *State v. Gopher* (1981), 193 Mont. 189, 631 P.2d 293. However, in *Gopher* we

relied on the United States Supreme Court's decision in *United States v. Cortez* (1981), 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621, to conclude when facts and circumstances are constitutionally sufficient to permit an investigatory stop of a motor vehicle. We noted that an important element of the *Cortez* analysis allowing investigative stops, was that Court's emphasis on the ability of experienced law enforcement officers to draw certain conclusions which laymen would not be able to draw under the same circumstances. *Gopher*, 193 Mont. at 193, 631 P.2d at 295. Based on *Cortez* we articulated the following two-part test which must necessarily be satisfied to give rise to the particularized suspicion necessary to justify an investigatory stop of a person's automobile:

The State's burden has two elements: (1) objective data *from which an experienced officer can make certain inferences*; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaging in wrongdoing or was a witness to criminal activity.

193 Mont. at 194, 631 P.2d at 296 (emphasis added).

22. ¶ The critical factor in both *Cortez* and *Gopher* is that trained and experienced law enforcement officers are capable of making inferences from the observation of certain facts which lay people are not qualified to make. Nothing in *Gopher* or *Cortez* authorized investigative stops based purely on secondhand information provided to law officers by untrained citizens.

23. ¶ This underlying premise of search and seizure law was recognized in the DUI context recently in *State v. Lee* (1997), 282 Mont. 391, 938 P.2d 637. In *Lee* an anonymous citizen informant reported a belief that the defendant was operating his motor vehicle under the influence of alcohol and described the probable whereabouts of the vehicle. When observed by a highway patrolman less than one-half hour later the defendant slowed his vehicle to a speed approximately 20 miles slower than the speed limit but the officer observed no other irregularities in his manner of operation before making an investigative stop. On appeal from the defendant's conviction for driving under the influence of alcohol, we noted that § 46-5-401, MCA requires a particularized suspicion for an investigatory stop and that operators of motor vehicles are otherwise protected against investigatory stops by the Fourth Amendment. We stated:

The Fourth Amendment applies to seizures of the person, including brief

investigatory stops such as the stop of a vehicle. *Reid v. Georgia* (1980), 448 U.S. 438, 440, 100 S. Ct. 2752, 2753, 65 L. Ed. 2d 890, 893. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in a crime. For sufficient cause to stop a person, the detaining police officers must have a particularized and objective basis for suspecting the particular persons stopped of criminal activity.

*Lee*, 282 Mont. at 394, 938 P.2d at 639 (citation omitted).

24. ¶ In *Lee* we referred to the two-part test established in *Cortez* and *Gopher* and held that the test can be satisfied by a combination of information including that which is provided by a citizen informant so long as it is corroborated by "independent observations of wrongdoing or illegality by the officer . . . ." *Lee*, 282 Mont. at 395, 938 P.2d at 640. We held, however, that in that case where there was no factual basis provided for the caller's suspicion of wrongdoing and the officer did not personally observe any evidence of wrongdoing by the defendant there was no objective data which would have enabled the officer to reach a conclusion justifying an investigative stop. In other words, there was insufficient objective data to support a particularized suspicion that the defendant had been engaged in wrongdoing. *Lee*, 282 Mont. at 396, 938 P.2d at 640.

25. ¶ However, the ink was barely dry on the *Lee* opinion when seven months later we decided *State v. Pratt* (1997), 286 Mont. 156, 951 P.2d 37. In *Pratt* an identified citizen informant reported to police that an intoxicated person was operating a motor vehicle. He described to the police the motor vehicle and its approximate location and direction of travel. When an officer who overheard the report observed the vehicle traveling at that location in the direction reported he initiated a stop following which the defendant was arrested for DUI. A more detailed description of the defendant's prearrest activities was given by the informant subsequent to the stop. However, the arresting officer did not have that information at the time of the arrest. On appeal *Pratt* argued there were insufficient facts to give rise to a particularized suspicion justifying the investigative stop. We acknowledged § 46-5-401, MCA and our decisions in *Gopher* and *Lee*, but distinguished *Pratt* on the basis that the informant in that case had identified himself. We adopted the three-part test referred to in the majority opinion, i.e., (1) whether the citizen informant identifies himself; (2) whether the report is based on personal observations of the informant; and (3) whether the officer's own observations corroborate the informant's information. This Court combined the information communicated by the informant

both before and after the stop to satisfy the second prong of the test and accepted the police officer's observation of the vehicle traveling in the direction and on the street described in satisfaction of the third prong of the test.

26. ¶ The problem with *Pratt*, (in addition to the fact that nothing in the prearrest report by the informant indicated that it was based on personal observation) is that it completely eliminates the stated basis which justified investigative stops in *Cortez* and in *Gopher*. That basis was specialized knowledge by experienced law enforcement officers which enabled them to draw conclusions from their observations which would not be apparent to ordinary citizens. If the third prong of the *Pratt* test requires no more corroboration than that the vehicle is at the place described by the informant or proceeding in the direction indicated by the informant, then the investigating officer's experience adds nothing to the equation and the corroboration requirement adds nothing to the information provided by the citizen informant. In effect, what we have done with *Pratt,* and taken to a new extreme in this case, is established a rule that the particularized suspicion requirement for investigative stops can be satisfied based solely on information provided by a citizen informant with no consideration given to the specialized experience on which the investigative stop exception to the Fourth Amendment was originally based in *Cortez* and *Gopher*. In other words, the whole factual predicate for allowing investigative stops as an exception to the Fourth Amendment (i.e., specialized knowledge) is no longer a requirement for an investigative stop since *Pratt*. (Unless, of course, it takes special training and experience to corroborate the report that the vehicle is at the location where it was reported to be.)

27. ¶ If the result described is this Court's intention then it should state clearly for the benefit of law enforcement officials that from this date forward the only thing required to establish a particularized suspicion is information from a citizen informant. On the other hand, if corroboration of what the police have been told by the informant is in fact significant, then it must necessarily involve corroboration of some illegal or irregular activity. Simply finding the vehicle reported at the place where it was reported doesn't corroborate anything relevant to the creation of a particularized suspicion.

28. ¶ For these reasons, I conclude that the decision of the majority in this case is contrary to the plain language of our statutory requirement found at § 46-5-401, MCA that investigative stops cannot be initiated without a particularized suspicion of criminal activity and that the decision further offends the prohibition found at the Fourth Amendment of the United States Constitution against unreasonable searches and seizures. To the extent that this result is authorized by our prior decision in *State*

*v. Pratt*, I would reverse that decision.

/S/ TERRY N. TRIEWEILER