DA 07-0351

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 228

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

RICHARD CLAWSON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC-06-0812
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jim Wheelis, Chief Appellate Defender, Helena, Montana

      For Appellee:

            Hon. Steve Bullock, Montana Attorney General; Matthew T.
Cochenour Assistant Attorney General, Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney, Billings, Montana

                            Submitted on Briefs: June 10, 2009

                                  Decided: July 7, 2009

Filed:

                _____
                                Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Richard Clawson appeals his conviction after a jury trial for the offenses of driving under the influence (§ 61-8-401, MCA); criminal possession of dangerous drugs (§ 45-9-102(2), MCA); and criminal possession of drug paraphernalia (§ 45-10-103, MCA).

¶2 Clawson presents the following issue for review:

¶3 Whether the District Court properly held that the arresting officer had particularized suspicion to make the investigatory stop that led to Clawson's arrest.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4 At 10:00 a.m. on October 7, 2007, Keri Perez, her husband and her 11-year-old son stopped to get gas at a convenience store in the Heights area of Billings, Montana. Keri pumped the gas while her husband and son waited in the car. Clawson and an acquaintance were also at the store buying beer. Clawson's vehicle was parked parallel to the Perez vehicle, oriented in the same direction. While Keri Perez was pumping the gas, she heard Clawson confront her husband with an obscenity, asking what he was looking at. Richard Perez was sitting in his car with the window up. Clawson continued confronting Richard who got out of his car, telling Clawson that he was only looking at Clawson's black lab dog and that Clawson should leave. Clawson was confrontational and belligerent and, according to Keri, was flailing his arms and coming toward the passenger door of their car. Her first impression was that Clawson was intoxicated. Richard could smell alcohol on Clawson's breath and saw him stumble. Keri was startled

2

and afraid of Clawson's behavior, and Richard was concerned that Keri's son was being frightened. Richard got back into their car and told Keri that Clawson was "really drunk and he shouldn't be driving" and that they should call the cops. Clawson left driving his vehicle.

¶5 Keri used her cell phone to call the Billings Police Department dispatch to report a possible drunk driver. She told the dispatcher about the incident, that Clawson started yelling at her husband for looking at the dog, and that she thought Clawson was intoxicated. Keri described Clawson's vehicle as a maroon Chevy Blazer or Ford Explorer, and provided the number of the Iowa license plate. Keri described Clawson in detail, along with the fact that he was traveling with a passenger and had a black lab in the vehicle. She gave the street location of the incident and the direction of Clawson's travel when he left. She provided dispatch with her full name, address, and home phone and cell phone numbers. She stated that she would file a complaint if Clawson were located.

¶6 Dispatch broadcast to officers that there was a possible DUI driver in the Heights area and relayed Keri's description of Clawson and his vehicle. Billings Police officers were dispatched to the convenience store to make contact with Keri and Richard Perez. Chris Romero was a deputy with the Yellowstone County Sheriff's Department and a 12-year law enforcement veteran who had made hundreds of DUI arrests. He heard the information from dispatch of an altercation at a gas station and a request that officers attempt to locate Clawson's vehicle. He heard that a witness had called in a report of the incident, that the suspect involved had driven off, and that the witness believed that the

3

driver was intoxicated. Romero received a description of the vehicle as a maroon SUV with Iowa plates, a male driver and a black lab. Romero soon saw Clawson's vehicle on Five Mile Road, a rural gravel road in the area described by dispatch. Clawson's vehicle was stopped in the travel lane with the door open. The black lab was running down the road.

¶7      When Romero arrived at Clawson's vehicle, Clawson retrieved the dog and started to drive away. Romero turned around, stopped the vehicle, talked to Clawson, and asked for his driver's license. Romero observed that Clawson's speech was slurred, his eyes were bloodshot and that his breath smelled of alcohol. Clawson stated that he had consumed "a beer" and Romero proceeded to investigate to determine whether Clawson was able to drive safely. During a consensual pat-down search Romero found marijuana and a pipe in Clawson's pockets. Romero gave Clawson a warning ticket for parking on the traveled way of the road. Clawson failed initial field sobriety tests conducted at the scene, as well as others conducted later at the station.

¶8      Clawson was charged with DUI and possession of drugs and paraphernalia. Clawson moved to dismiss the charges on the ground that the evidence obtained at the scene of the stop should be suppressed because Romero lacked particularized suspicion to stop and conduct an investigation. The District Court held an evidentiary hearing on the motion to dismiss and concluded that Romero had sufficient information to stop Clawson and investigate. Clawson was subsequently convicted of all three offenses after a jury trial and was sentenced. He appeals.

**STANDARD OF REVIEW**

4

¶9    We review denial of a motion to suppress evidence to determine whether the district court's findings of fact are clearly erroneous and whether the court correctly applied those findings as a matter of law. *State v. Elison*, 2000 MT 288, ¶ 12, 302 Mont. 228, 14 P.3d 456. We review a finding that an officer had particularized suspicion to conduct an investigatory stop to determine whether the finding was clearly erroneous. *State v. Farabee*, 2000 MT 265, ¶ 11, 302 Mont. 29, 22 P.3d 175.

**DISCUSSION**

¶10    Both the United States and Montana Constitutions require that searches and seizures be reasonable. U.S. Const. amend. IV; Mont. Const. art. II, § 11. These protections apply to investigative stops. *State v. Gopher*, 193 Mont. 189, 194, 631 P.2d 293, 296 (1981). An investigative stop is valid if the officer possessed a particularized suspicion that the subject has committed or is about to commit an offense. Section 46-5-401(1), MCA. Particularized suspicion requires a showing of objective data from which an officer can make certain inferences, and a resulting suspicion that the subject is or has been engaged in wrongdoing. *Elison*, ¶ 15.

¶11    Whether an investigative stop is founded upon particularized suspicion is a question of fact that must be evaluated under the totality of the circumstances. When evaluating the totality of the circumstances a court considers the quantity or content of the information available to the officer and the quality or degree of reliability of that information. *Elison*, ¶ 16. An arresting officer may rely on information conveyed by a reliable third party to form particularized suspicion sufficient to justify an investigative stop. *State v. Pratt*, 286 Mont. 156, 162, 951 P.2d 37, 41 (1997). In *Pratt* this Court

5

recognized that "[c]itizen informants can provide useful information and play an important role in law enforcement." *Pratt*, 286 Mont. at 164, 951 P.2d at 42. We adopted three factors to use to evaluate the reliability of the report of a citizen informer in the context of whether the totality of the circumstances warranted an investigative stop: (1) whether the informant identified herself to the authorities; (2) whether the informant's report is based on personal observation; and (3) whether the officer's observations corroborate the informant's information. *Pratt*, 286 Mont. at 164-65, 951 P.2d at 42-43.

¶12 All information that the citizen informant gives to the dispatcher is relevant when evaluating the justification for an investigative stop, whether or not it is specifically relayed to the officer in the field. *State v. Hall*, 2004 MT 106, ¶ 15, 321 Mont. 78, 88 P.3d 1273. An officer in the field does not have to personally assess the reliability of the tip given to dispatch. *Hall*, ¶ 11. Effective law enforcement often depends upon officers acting on the directions and information transmitted swiftly from one to another and "officers cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." *Hall*, ¶ 11, quoting, *United States v. Robinson*, 536 F.2d 1298, 1299 (9th Cir. 1976). In the present case, the District Court found that while Clawson's stopping on the roadway likely did not provide sufficient particularized suspicion, Romero's investigative stop was justified by the information supplied by Keri Perez.

¶13 Considering the *Pratt* factors, first it is clear that Perez adequately identified herself. She provided her name, her address, her home phone number, her cell phone number, and the location she was calling from. Second, the information was based upon

6

her personal observations and experience. She saw and heard the unprovoked and belligerent confrontation that Clawson initiated with her husband a short distance from where she was standing pumping gas. She heard her husband's contemporaneous conclusion that Clawson was intoxicated, based upon his face-to-face interaction with Clawson. She observed and relayed details about Clawson's appearance, his vehicle type, make, color and license. She observed and relayed Clawson's direction of travel when he left. Third, the officer corroborated Keri's information. Within five to ten minutes of hearing the information over his radio, Romero found Clawson's vehicle in the area indicated by dispatch, based upon information supplied by Perez. The description of a maroon SUV with Iowa plates and a dog, based upon information supplied by Perez, matched what Romero found when he located Clawson. Clawson fit the physical description given by Perez. Clearly the three-prong test of *Pratt* has been satisfied.

¶14 Romero saw Clawson's vehicle stopped in the travel lane of the road with the door open, a traffic offense for which Romero issued a warning ticket. Even though Romero did not observe other DUI-related behavior by Clawson prior to initiating his investigative stop, direct observation of the specific illegal activity is not required as long as other salient facts are corroborated.

> In applying the Pratt test, it is important to remember that the standard of "particularized suspicion does not require that the law enforcement officer be certain that an offense has been committed."

*State v. Roberts*, 1999 MT 59, ¶ 26, 293 Mont. 476, 977 P.2d 974.

The District Court observed in the present case that neither the informant nor the investigating officer can normally know whether the subject driver is intoxicated until "tests have been done [or] field sobriety maneuvers have been done." That is usually the point of an investigative stop: to allow the officer to make a determination as to whether further investigation is warranted. A "trained and experienced law enforcement officer is entitled to draw inferences and make deductions that might well elude a layperson in determining whether a particular stop is justified." *Roberts*, ¶ 26. As the District Court explained, the officer gets information about "the layman's observations" and attempts to verify them if the officer happens to find the subject vehicle:

> And if the officer has no further probable cause to believe that the person is intoxicated, nothing further happens with all of that. But if the officer further corroborates that the person that is stopped seems to be under the influence of alcohol, then it proceeds on, as it did in this case.

Under the totality of the circumstances of this case, we find that the stop was justified and that the District Court's findings were not clearly erroneous. We affirm.


/S/ MIKE McGRATH


We concur:


/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE
/S/ BRIAN MORRIS