DA 11-0309

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 36

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JAMES GILL,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-10-430
Honorable Karen S. Townsend, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joslyn Hunt, Chief Appellate Defender, Lisa S. Korchinski, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General, Tammy A. Hinderman,
Assistant Attorney General, Helena, Montana

Submitted on Briefs:  December 21, 2011

Decided:  February 14, 2012

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      James Gill entered a guilty plea in Missoula County Justice Court of Driving Under the Influence and Unlawful Possession after the Justice Court denied his motion to suppress. Gill appealed to the District Court for the Fourth Judicial District, Missoula County. The District Court also denied Gill's motion to suppress and remanded the case to Justice Court for execution of sentence. Gill now appeals to this Court. We affirm.

¶2      Gill raises one issue on appeal: Whether the District Court erred in denying Gill's motion to suppress.

## Factual and Procedural Background

¶3      Shortly before 9:00 p.m. on April 30, 2010, Susan Brady was traveling eastbound on Interstate 90 near Missoula when she spotted what she described as a "very intoxicated driver." Brady used a cell phone to call 911. She reported to the dispatcher that the driver was also heading eastbound on Interstate 90, and that he was unable to stay in his own lane. She stated that the vehicle had hit the cement barrier separating the opposing lanes of traffic on the freeway.

¶4      Brady described the vehicle as a dark green Chevy pickup that was probably manufactured during the 1990s. She also described the pickup as having more of a square appearance than a rounded one and that in the bed of the pickup was an unsecured load of wooden pallets. Brady told the dispatcher that there was debris flying out of the back of the truck, thus she was afraid to pull in behind the pickup to obtain its license plate number. Brady reported that there were two males in the pickup and that the passenger was drinking a beer. Brady further reported that she exited the freeway at the

2

Van Buren Street exit, and that she last saw the pickup still heading eastbound on Interstate 90 towards the city of East Missoula.

¶5 Brady gave the dispatcher her name, home address, and the number of the cell phone from which she had placed the 911 call. Brady also indicated that she was willing to sign a complaint if the vehicle could be located.

¶6 A few minutes after Brady's tip, Missoula dispatch broadcast a report that there was a green Chevy pickup with a load of pallets in the back traveling eastbound from the Van Buren exit on Interstate 90 that was "all over the road." The report also described the occupants of the pickup.

¶7 At 9:46 p.m., Montana Highway Patrol Trooper Richard Salois saw a dark green 1998 Chevy pickup matching the description in the dispatch report parked near the entrance of the Town Pump in Bonner. The Bonner Town Pump is located just off Interstate 90 east of Missoula. As the pickup pulled out of the Town Pump, Trooper Salois followed it and activated his emergency lights. He did not observe any visible damage to the pickup either before or after he initiated the traffic stop. Trooper Salois made contact with the driver whom he later identified as Gill. There were two other males inside the pickup. Trooper Salois observed various open containers of alcohol in the pickup and he detected a strong odor of alcohol, thus he initiated a DUI investigation.

¶8 Gill received citations for DUI in violation of § 61-8-401(1)(a), MCA, and possession of alcohol while under the age of 21 in violation of § 45-5-624(2)(a)(i), MCA. Gill filed a motion to suppress all of the evidence in this case arguing that law enforcement did not have particularized suspicion to support an investigative stop of his

3

vehicle. The Justice Court denied his motion. Thereafter, Gill entered into a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress.

¶9 Gill appealed to the Fourth Judicial District Court wherein he filed a new motion to suppress. The District Court held an evidentiary hearing at which Gill waived his right to appear due to his deployment in Iraq. His motion to suppress was ultimately denied. Gill then appealed to this Court.

## Standard of Review

¶10 We review a district court's grant or denial of a motion to suppress to determine whether the court's findings are clearly erroneous and whether those findings were applied correctly as a matter of law. *City of Missoula v. Moore*, 2011 MT 61, ¶ 10, 360 Mont. 22, 251 P.3d 679 (citing *State v. Clawson*, 2009 MT 228, ¶ 9, 351 Mont. 354, 212 P.3d 1056). A district court's finding that particularized suspicion exists is a question of fact which we review for clear error. *Moore*, ¶ 10. A finding is clearly erroneous if it is not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or if our review of the record leaves us with the firm conviction that a mistake has been made. *Moore*, ¶ 10 (citing *State v. Roberts*, 1999 MT 59, ¶ 11, 293 Mont. 476, 977 P.2d 974).

## Discussion

¶11 ***Whether the District Court erred in denying Gill's motion to suppress.***

¶12 Gill argues that the District Court erred in denying his motion to suppress because Brady's report to 911 was unreliable as the truck stopped by Trooper Salois showed no

4

signs of damage from hitting the median cement barrier on Interstate 90. Thus, Trooper Salois was unable to corroborate Brady's report.

¶13 The State argues that the District Court's determination that Trooper Salois had particularized suspicion to stop Gill is supported by substantial evidence in the record and is not clearly erroneous. The State maintains that Brady's report contained sufficient indicia of reliability to support the stop made by Trooper Salois.

¶14 Both the United States Constitution and the Montana Constitution protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Mont. Const. art II, § 11. These constitutional protections extend to investigative stops of vehicles made by law enforcement officers. *State v. Cameron*, 2011 Mont. 276, ¶ 8, 362 Mont. 411, 264 P.3d 1136 (citing *State v. Flynn*, 2011 MT 48, ¶ 7, 359 Mont. 376, 251 P.3d 143; *State v. Larson*, 2010 MT 236, ¶ 19, 358 Mont. 156, 243 P.3d 1130). "Under Montana Law, a law enforcement officer 'may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.' " *Cameron*, ¶ 8 (quoting § 46-5-401(1), MCA).

¶15 We held in *Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842, that to establish particularized suspicion for a stop, the State must show that the officer possessed (1) objective data and articulable facts from which the officer can make certain reasonable inferences, and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense. Furthermore, "[w]hether particularized suspicion exists is evaluated under the totality of the circumstances and

5

requires consideration of the quantity or content of the information available to the officer and the quality or degree of reliability of that information." *Moore*, ¶ 16 (citing *State v. Rutherford*, 2009 MT 154, ¶ 12, 350 Mont. 403, 208 P.3d 389).

¶16 In addition, an officer may rely on information conveyed by a third person to formulate particularized suspicion to stop a person. When an officer's particularized suspicion is based upon a citizen informant's report, that report must contain some indicia of reliability. *State v. Pratt*, 286 Mont. 156, 165, 951 P.2d 37, 42 (1997) (citing *State v. Villegas-Varela*, 887 P.2d 809, 811 (Or. 1994)). Hence, we have identified three factors to be considered when assessing the reliability of a citizen informant's report: (1) whether the informant identified herself to law enforcement thereby exposing her to criminal and civil liability if the report is false; (2) whether the informant's report was based on the personal observations of the informant; and (3) whether the officer's own observations corroborated the informant's information. *Pratt*, 286 Mont. at 165, 951 P.2d at 42-43 (citing *Villegas-Varela*, 887 P.2d at 810-11). We will examine each of these factors in relation to the facts in this case.

¶17 *1. Whether the informant identified herself to law enforcement thereby exposing her to criminal and civil liability if the report is false.*

¶18 A citizen informant who is motivated by good citizenship and who is willing to disclose the circumstances by which the incriminating information became known is presumed to be telling the truth. *Moore*, ¶ 18 (citing *State v. Martinez*, 2003 MT 65, ¶ 34, 314 Mont. 434, 67 P.3d 207). Information provided by the citizen informant, such as the informant's name, address, and telephone number, lends a high indicia of

reliability to the informant's report. *Moore*, ¶ 18 (citing *State v. Myhre*, 2005 MT 278, ¶ 18, 329 Mont. 210, 124 P.3d 126).

¶19 Gill concedes that Brady provided dispatch with sufficient information to meet this prong of the test. She gave dispatch her first and last name, her home address, the number of the cellular phone from which she placed the call, and the location from which she was calling. She even agreed to continue to work with law enforcement on the case and sign a complaint if officers located the pickup.

¶20 By identifying herself to law enforcement, Brady exposed herself to civil and criminal liability if her report turned out to be false. Consequently, Trooper Salois was justified in presuming that the information Brady provided was truthful and had a high indicia of reliability.

¶21 *2. Whether the informant's report was based on the personal observations of the informant.*

¶22 A citizen informant's belief that a person is driving under the influence must be based, in part, on his or her personal observations. *Moore*, ¶ 21 (citing *Clawson*, ¶ 13). An officer is allowed to infer that a report is based on a citizen informant's personal observations if the report contains sufficient detail that "it is apparent the informant has not fabricated the report out of whole cloth and the report is of the sort which in common experience may be recognized as having been obtained in a reliable way." *Moore*, ¶ 21 (brackets and ellipsis omitted) (citing *Pratt*, 286 Mont. at 165, 951 P.2d at 42-43; *Villegas-Varela*, 887 P.2d at 811). Innocent details personally observed by the informant

are also relevant in assessing the reliability of the report. *Moore*, ¶ 21 (citing *Pratt*, 286 Mont. at 165-66, 951 P.2d at 43).

¶23 In this case, Gill argues that the second factor of the *Pratt* test has not been met as Brady's information was not reliable. Gill points out that Brady stated that she observed the pickup hit the cement barrier on Interstate 90; however, Trooper Salois did not observe any damage to the pickup Gill was driving.

¶24 The State points out that Brady was traveling in a vehicle on Interstate 90 in the same direction of travel as Gill when she observed his dangerous driving behavior and placed the call to dispatch. Brady provided dispatch with her own personal observations of Gill's driving behavior including that he was unable to stay in his own lane of traffic, leading her to believe that he was very intoxicated. Brady told dispatch that although she did not observe Gill take a drink, she did observe Gill's passenger drinking from a container of beer.

¶25 In addition, Brady was able to provide dispatch with a detailed description of the pickup including its make, model-type, color, approximate age, and general body shape, as well as its last known location and direction of travel. She also reported to dispatch that there were two male occupants in the pickup and that it carried a load of wooden pallets.

¶26 As for Brady's observation that Gill's pickup hit the cement barrier separating the lanes of traffic, the State points out that cement barriers such as the one on Interstate 90 are specifically designed, not only to prevent vehicles from crossing into the oncoming lanes of traffic, but also to prevent or minimize vehicle damage if a vehicle does come in

8

contact with those barriers. Such barriers are wider at the base than they are at the top to allow a vehicle's tires to ride up the barrier and to funnel the tires back into the proper lane of travel. Thus, according to the State, a vehicle's tires can hit a concrete barrier of this type without the vehicle's body ever coming into contact with the barrier and without the vehicle sustaining any damage.

¶27 Moreover, Brady never stated that the pickup was damaged in anyway after hitting the cement barrier. Consequently, the fact that Trooper Salois did not observe any damage to Gill's pickup does not call into question the reliability of Brady's report under this factor of the *Pratt* test.

¶28 We conclude that Brady's own contemporaneous personal observations of Gill's pickup, its occupants, and Gill's driving behavior provided specific, articulable and objective facts that justified Trooper Salois' reliance upon the information Brady provided.

¶29 *3. Whether the officer's own observations corroborated the informant's information.*

¶30 "An officer corroborates an informant's report by observing illegal activity *or* by finding 'the person, the vehicle, and the vehicle's location substantially as described by the informant.' " *Moore*, ¶ 25 (quoting *Pratt*, 286 Mont. at 165, 951 P.2d at 43). Furthermore, we stated in *Pratt* that if the first and second factors are met, an officer may corroborate an informant's tip by observing wholly innocent behavior. *Pratt*, 286 Mont. at 168, 951 P.2d at 44.

¶31 Gill argues that in this case, Trooper Salois did not corroborate the informant's report because he did not locate a similarly described truck "until 45 minutes later, yet only five miles from where the truck was first reported." Gill maintains that this time frame is too large for the requisite particularized suspicion that his pickup was the same pickup observed by Brady. He claims that based on the passage of time, the reported truck would have been found further down the road near Drummond, not at Bonner. In addition, Gill contends that his pickup was not "substantially as described by the informant" because there was no damage to his pickup.

¶32 The State argues that Gill has not pointed to any cases where this Court has determined that particularized suspicion was extinguished due to the passage of time between the receipt of an informant's tip regarding an individual driving under the influence and the discovery of the vehicle in question. In addition, the State contends that the delay of 50 minutes between Brady's report and Trooper Salois' discovery of Gill's pickup was not so unreasonably long as to render Brady's report stale.

¶33 We agree with the State. Moreover, Gill's argument that his pickup could not possibly be the pickup reported by Brady 50 minutes earlier because he was found only a few miles away, makes no sense. Trooper Salois found the pickup parked at the Town Pump, a casino and convenience store. It is unknown how long Gill was there, but it is not unreasonable to assume that he stopped there shortly after Brady observed the pickup and then remained there for some time.

¶34 Trooper Salois confirmed the make, model-type, color, approximate age, and general body shape of the vehicle described by Brady. Trooper Salois also confirmed the

sex of the driver, that the vehicle was in an expected location based on its last known direction of travel, and that it was carrying the same distinctive and unusual payload described by Brady. In addition, contrary to Gill's contentions, Trooper Salois did not need to corroborate that the pickup was damaged because Brady did not report that the pickup sustained any damage when it hit the cement barrier.

¶35 As we noted earlier in this Opinion, an officer corroborates an informant's report by observing illegal activity or by finding "the person, the vehicle, and the vehicle's location substantially as described by the informant." *Moore*, ¶ 25 (citing *Pratt*, 286 Mont. at 165, 951 P.2d at 43). We conclude in this case, that Trooper Salois sufficiently corroborated Brady's report when less than an hour after Brady's call, Trooper Salois found a vehicle substantially as described by Brady in the general area also described by Brady.

### Conclusion

¶36 Based on the totality of the circumstances, we conclude that the information provided to Trooper Salois contained sufficient indicia of reliability to form the basis for his particularized suspicion that Gill's pickup was the same one that Brady observed engaged in criminal activity thereby warranting further investigation.

¶37 Accordingly, we hold that the District Court did not err in denying Gill's motion to suppress.

¶38 Affirmed.

/S/ JAMES C. NELSON

11

We Concur:


/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE