FILED

06/20/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0347

DA 16-0347

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 148

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

GREGORY ZIETLOW,

      Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District,<br>In and For the County of Missoula, Cause No. DC 16-121<br>Honorable Karen Townsend, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Brett D. Schandelson, Tipp & Buley, P.C., Missoula, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
            Attorney General, Helena, Montana

            Kirsten Pabst, Missoula County Attorney, Britany Santomo, Deputy County
            Attorney, Missoula, Montana

                      Submitted on Briefs:  April 5, 2017

                                Decided:  June 20, 2017

Filed:

                             _____
                                     Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Gregory Zietlow (Zietlow) appeals from an order entered in the Montana Fourth Judicial District Court, Missoula County, finding there was particularized suspicion to initiate an investigatory stop of Zietlow's vehicle for driving under the influence (DUI). We affirm.

¶2 Zietlow presents the following issue for review:

*Whether a corroborated tip from an identified citizen informant based, in part, on personal observations of a co-worker is reliable.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On June 13, 2015, at approximately 7:30 p.m., Karmen Stagl (Stagl), an employee at the Town Pump in Bonner, called 911 to report a suspected drunk driver. Over the next six minutes, Stagl made three separate phone calls to 911 updating dispatch concerning Zietlow's behavior. During the first 911 call, Stagl told dispatch that she was reporting on behalf of her coworker, later identified as Jamie Weavers (Weavers). Stagle can be heard in the 911 tape asking Weavers more questions, which were specifically prompted by the dispatcher. Stagl reported to dispatch her coworker's answers: that Weavers observed Zietlow stumbling; that Zietlow smelled like alcohol; and that Weavers could tell Zietlow was intoxicated. Stagl, herself, observed Zietlow walk into the building and enter the restroom. Stagl continued to provide dispatch with a real time update of Zietlow's activities, relating that Zietlow was "bugging other customers," walking around other vehicles while customers were "just kind of watching him," and appeared to be about to leave. Stagl described Zietlow's vehicle as a black Chevy Silverado LTZ with temporary

2

dealer plates and provided the tag number in its entirety. She provided a physical description of Zietlow, which included his hair color, height, the presence of facial hair, and what he was wearing. During her last call to 911, Stagl describes Zietlow pulling out of the parking lot and heading east on Highway 200.

¶4 Highway Patrol Trooper Andrew Novak (Trooper Novak) used the tag information provided by Stagl and learned the vehicle was registered to Zietlow and that Zietlow lived about 6 miles from the Bonner Town Pump. When Trooper Novak arrived at the address he did not observe any black Chevy Silverado pickup truck. At that point, Trooper Novak turned around and headed back towards the Town Pump. Almost immediately, however, he observed a pickup truck matching the description given by Stagl pull into Zietlow's driveway. Trooper Novak initiated a traffic stop, during which he confirmed the tag number, the vehicle's description, and the physical description of Zietlow. Ultimately, the stop ripened into probable cause to arrest Zietlow for driving under the influence.

¶5 On June 15, 2015, Zietlow was charged in Missoula County Justice Court with Aggravated Driving Under the Influence, in violation of § 61-8-465, MCA, due to having a blood alcohol content above .16. Zietlow argued in a motion to suppress that the investigating officer did not have particularized suspicion to initiate the stop of his vehicle. The Justice Court denied Zietlow's motion and Zietlow subsequently entered a guilty plea to aggravated DUI, reserving his right to appeal the Justice Court's ruling on his motion to suppress. Zietlow filed a notice of appeal. Following briefing by the parties and an evidentiary hearing in which Trooper Novak testified, the District Court denied Zietlow's motion to suppress in a written order issued May 31, 2016. Zietlow appeals.

3

## STANDARD OF REVIEW

¶6 This Court reviews a district court's denial of a motion to suppress to determine whether the court's findings are clearly erroneous and whether those findings were applied correctly as a matter of law. *City of Missoula v. Moore*, 2011 MT 61, ¶ 10, 360 Mont. 22, 251 P.3d 679. A district court's finding that particularized suspicion exists is a question of fact, which this Court reviews for clear error. *Moore*, ¶ 10. A finding is clearly erroneous if it is not supported by substantial evidence, if the district court has misapprehended the effect of the evidence, or if this Court's review of the record leaves us with the firm conviction that a mistake has been made. *Moore*, ¶ 10.

## DISCUSSION

¶7 *Whether a corroborated tip from an identified citizen informant based, in part, on personal observations of a co-worker is reliable.*

¶8 The United States Constitution and the Montana Constitution protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Mont. Const. art. II, § 11. Law enforcement officers may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense. Section 46-5-401(1), MCA; *State v. Peters*, 2011 MT 274, ¶ 57, 362 Mont. 389, 264 P.3d 1124; *Hulse v. DOJ, Motor Vehicle Div.*, 1998 MT 108, ¶ 12, 289 Mont. 1, 961 P.2d 75.

¶9 Particularized suspicion exists when an officer has objective data and articulable facts from which the officer can make certain inferences, and a resulting suspicion that the subject is, or has been, engaged in wrongdoing. *Moore*, ¶ 16. Whether particularized

4

suspicion exists is a question of fact, which is evaluated under the totality of the circumstances. *State v. Gill*, 2012 MT 36, ¶ 15, 364 Mont. 182, 272 P.3d 60. When evaluating the totality of the circumstances, a court considers the quantity or content of the information available and the quality or degree of reliability of that information. *Gill*, ¶ 15.

¶10 We have stated that "[a] citizen informant who is motivated by good citizenship and [is] willing to disclose the circumstances by which the incriminating information became known is presumed to be telling the truth." *Moore*, ¶ 18 (quoting *State v. Martinez*, 2003 MT 65, ¶ 34, 314 Mont. 434, 67 P.3d 207 (internal quotations omitted)). Thus, information provided by a citizen informant, "such as the citizen informant's name, address, and telephone number, lends a 'high indicia of reliability' to his or her report." *Moore*, ¶ 18 (quoting *State v. Myhre*, 2005 MT 278, ¶ 18, 329 Mont. 210, 124 P.3d 126). An arresting officer may rely on information conveyed by a reliable third person to form the particularized suspicion necessary to justify an investigative stop if the report contains some indicia of reliability. *State v. Pratt*, 286 Mont. 156, 162, 951 P.2d 37, 41 (1997). To determine the reliability of a third person report and thus the sufficiency of an officer's particularized suspicion based on that report, this Court has adopted three factors to use in its evaluation. *State v. Clawson*, 2009 MT 228, ¶ 11, 351 Mont. 354, 212 P.3d 1056 (citing *Pratt*, 286 Mont. at 164-65, 951 P.2d at 42-43). The factors are: (1) whether the informant identified themselves to the authorities; (2) whether the informant's report is based on personal observation; and (3) whether the officer's observations corroborate the informant's information. *Pratt*, 286 Mont. at 164-65, 951 P.2d at 42-43.

¶11 Zietlow does not contest that the first *Pratt* factor—the identity of the citizen informant—has been satisfied. Zietlow argues, however, that the second and third factors have not been met. Specifically, Zietlow maintains that Stagl's report was not based on her own personal observations of Zietlow's intoxicated behavior and that Trooper Novak did not corroborate any of the information provided by Stagl.

¶12 This Court has previously considered the reliability of a citizen informant's report when that report is based, in part, on observations made by someone other than the citizen informant. In *Clawson*, we addressed the second *Pratt* factor and determined not only that the citizen informant "saw and heard the unprovoked and belligerent confrontation that Clawson initiated with her husband a short distance [away]," but that "she heard her husband's contemporaneous conclusion that Clawson was intoxicated, based upon his face-to-face interaction with Clawson." *Clawson*, ¶ 13. We noted that the citizen informant "observed and relayed details about Clawson's appearance, his vehicle type, make, color, and license." *Clawson*, ¶ 13. Further, "she observed and relayed Clawson's direction of travel when he left," which was corroborated by law enforcement when they located Clawson in the area indicated by the citizen informant. *Clawson*, ¶ 13. Here, as in *Clawson*, Stagl heard first-hand her coworker's conclusion that Zietlow was intoxicated, stumbling around, and smelled like alcohol. Stagl's own personal observations were that Zietlow was "bugging other customers" who were "just kind of watching him." She provided a detailed description of his vehicle and plates; gave a detailed physical description of Zietlow; and identified his direction of travel.

¶13 We have rejected a rigid and mechanical approach to assessing the information offered as justification for an investigatory stop and instead have held that whether or not particularized suspicion exists is "factually driven and depends on the totality of the circumstances." *Pratt*, 286 Mont. at 168, 951 P.2d at 44. Although some of the information Stagl imparted to dispatch was relayed to her by a coworker, Stagl also provided her own personal observations which supported a finding that Stagl's information was reliable. Stagl called 911 because, in addition to the contemporaneous observations relayed to her by a coworker, Stagl observed unusual behavior which supported a conclusion that Zietlow might be intoxicated and was preparing to operate a motor vehicle. We reject the proposition that law enforcement must be constrained in their investigation of a suspected DUI on the basis that only Weavers' report to dispatch is sufficient to trigger an investigatory stop. Zietlow's intoxicated behavior, which was sufficiently alarming to both Stagl and Weavers to compel them to report to law enforcement, does not necessitate *separate* calls by each to law enforcement. The circumstances clearly establish the conduct was occurring as Stagl was talking to dispatch and that Stagl was relating what Weavers was contemporaneously reporting and observing. We conclude that the report contained sufficient personal observations from Stagl and Weaver, as reported by Stagl, to satisfy the second *Pratt* factor.

¶14 When addressing the third *Pratt* factor, corroboration of the informant's tip by law enforcement, we have held it sufficient that "[a]n officer corroborates an informant's report by observing illegal activity *or* by finding 'the person, vehicle, and the vehicle's location substantially as described by the informant.'" *Moore*, ¶ 25 (quoting *Pratt*, 286 Mont. at

7

165, 951 P.2d at 43 (emphasis in original)). We also stated in *Pratt* that if the first and second factors are met, an officer may corroborate a citizen informant's tip "even though the officer did not observe any illegal or impaired driving on Pratt's part before the investigatory stop." *Pratt*, 286 Mont. at 168, 951 P.2d at 44. Here, both the first and second *Pratt* factors have been met; thus, it was only necessary that Trooper Novak corroborate Stagl's report by observing some of the details Stagl relayed, regardless of whether the corroboration was of innocent behavior.

¶15 Trooper Novak relied on Stagl's description of both the vehicle and the temporary tag number to find the address associated with the vehicle, which was not far from the Town Pump. Knowing that he could not make it to the Town Pump until well after Zietlow had left, Trooper Novak proceeded straight to the address. He arrived there in 12 minutes and, upon observing the vehicle was not at the address, turned around and headed back towards the Town Pump. Almost instantly, Trooper Novak observed a vehicle matching Stagl's description pull into the residence associated with the license plate. Trooper Novak corroborated the clothes Zietlow was wearing, Zietlow's physical description, and observed Zietlow in control of the vehicle matching the description and plate number relayed by Stagl.

¶16 Zietlow appears to argue that Trooper Novak was unable to corroborate Zietlow's route of travel as being the same as that relayed by Stagl, particularly since he was found more than 6 miles from the Bonner Town Pump. In *State v. Peters*, 2011 MT 274, 362 Mont. 389, 264 P.3d 1124, however, we found the third *Pratt* factor satisfied where police found an alleged drunk driver's truck parked in his own driveway after a concerned citizen

reported him and provided his license plate number. *Peters*, ¶¶ 46, 60. The law enforcement officer in *Peters* went to the business where the citizen informant reported she had last seen Peters. Not finding Peters at that location, the officer then proceeded to the address associated with the license plate number given by the citizen informant. At the address, the officer found a vehicle with the license plate number matching the description given by the citizen informant and located Peters inside his home. We held the corroboration of these innocent details sufficient to satisfy the third *Pratt* factor.

## CONCLUSION

¶17 Based on the totality of the circumstance, we conclude that Stagl's report satisfied the *Pratt* factors and that it was sufficiently reliable to provide Trooper Novak with particularized suspicion to stop Zietlow's vehicle. We affirm the District court's denial of Zietlow's motion to suppress.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT