# IN THE COURT OF APPEALS OF IOWA

No. 18-0467
Filed June 5, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**PHILLIP ORLANDO NAYLOR,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Timothy T. Jarman, District Associate Judge.

A defendant appeals his conviction for second-offense operating while intoxicated. **AFFIRMED.**

Nick E. Wingert of Hall & Wingert, P.L.C., Sioux City, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

We are faced with the question whether an anonymous caller reporting a "drunk driver" offered sufficient reliable information to give police reasonable suspicion for an investigatory stop. Phillip Naylor appeals his conviction for operating while intoxicated, second offense, alleging the district court should have granted his motion to suppress evidence discovered after police pulled him over based on two 911 calls from the same unnamed source. Applying the tests in *State v. Kooima*, 833 N.W.2d 202, 208 (Iowa 2013), and *Navarette v. California*, 572 U.S. 393, 402–03 (2014), we find the details offered by the caller showed enough indicia of the driver's intoxication to warrant stopping his truck to investigate. Accordingly, we affirm the suppression ruling and resulting conviction.

## I.   Facts and Prior Proceedings

> I want to report a drunk driver and I can tell you his name and address and he just took off again drunk; he couldn't walk; he was fighting with a guy in the road, screaming and yelling and then took off in his car and he'll be back in a little bit.

So started the 911 call placed to the Sioux City police dispatcher around midnight.[1] The anonymous caller described the driver's car and his direction of travel, but did not have a license plate number. When the dispatcher asked for the driver's name, the caller said: "It's Phil something . . . he lives on West Street the cops know, they've been there enough."

The dispatcher assured the caller she would "broadcast it out" for the officers to start watching for the driver. The caller responded:

> [I]f they could sit up at the corner of this on West Third, on the 1700 block; if they sat there and wait, he'll be pulling up anytime and he'll be getting

---

[1] The district court heard the 911 calls at the suppression hearing.

out of the car and they'll be able to see him drive up and try to back in his spot and try to; I mean he couldn't even walk across the street when he was yelling at people, he ended up grabbing onto the street sign. . . . My kids play out here and he's drunk every day driving like this, but this is enough . . . but this is anonymous . . . so.

Eleven minutes later, the same anonymous caller redialed 911 to tell the dispatcher that the driver had switched vehicles and was now in a maroon and silver Chrysler pickup. The caller noted: "I can't get the plate because of where he is parked . . . he left his driveway. . . . straight down West Third towards Hamilton."

Hearing the dispatch, Sioux City Police Officer Mackenzie Neely spotted Naylor at West Third and Allan streets "right by . . . Uncle Dave's bar.[2] He was driving a silver and red Chevy pickup and somebody called him in saying that he could possibly be intoxicated. That is why I pulled him over." The State charged Naylor with operating while intoxicated, second offense, an aggravated misdemeanor, in violation of Iowa Code section 321J.2 (2017).

Naylor moved to suppress the evidence of intoxicated driving revealed during the traffic stop. The motion asserted: "The anonymous tip did not provide sufficient indicia of reliability to give rise to reasonable suspicion for an investigatory stop of the defendant's vehicle." Naylor cited *Kooima*, 833 N.W.2d at 210–11, for the proposition a valid tip must relate personal observations consistent with drunk driving. The district court denied the motion to suppress, finding "the information provided by the informant in this case is much more significant and detailed than the information provided by the informant" in *Kooima*.

---

[2] On cross examination at the suppression hearing, defense counsel asked the officer to clarify that Uncle Dave's Bar was actually located at the intersection of George Street and West Third, three blocks from where the officer first noticed Naylor.

After losing his motion to suppress, Naylor waived his right to a jury trial; the court found him guilty on stipulated facts. He now appeals his conviction and attacks the suppression ruling.

## II. Standard of Review

In arguing for suppression, Naylor invokes his right to be free from unlawful searches and seizures enshrined in both the state and federal constitutions. *See Kooima*, 833 N.W.2d at 205. We review such constitutional claims de novo. *State v. Kreps*, 650 N.W.2d 636, 640 (Iowa 2002).

## III. Analysis

Naylor contends the Sioux City officer's investigatory stop was unlawful under both the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution.[3] But he does not lobby for a different analysis or result under state constitutional principles. Instead, he focuses on *Kooima* and *Navarette*—both Fourth Amendment cases. Accordingly, we analyze Naylor's claim under substantive federal standards (while reserving the right to apply those standards in a "fashion different from federal precedent"). *See State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015) (citing *State v. Tyler*, 830 N.W.2d 288, 291–92 (Iowa 2013)).

The core question is whether Officer Neely had reasonable suspicion to stop Naylor's truck based solely on the caller's information. Reasonable suspicion

---

[3] The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Iowa Constitution protects "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated." Iowa Const. art. I, § 8.

to justify a traffic stop depends on both the content of the information relayed to police and its degree of reliability. *Navarette*, 572 U.S. at 397 (applying a "totality of the circumstances" standard).

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Alabama v. White*, 496 U.S. 325, 330 (1990).

To decide if Officer Neely had reasonable suspicion, we look first to the analysis in *Kooima*—a precursor to *Navarett*e.[4] In *Kooima*, a 911 caller—who did not identify himself—alerted dispatch to a silver Suburban "ready to leave to Rock Valley" from a steakhouse in Doon; the caller said the vehicle's occupants were "loaded." 833 N.W.2d at 204. When the dispatcher asked if he meant they were drunk, the caller replied: "I know they are." *Id.* The caller said the vehicle was "full of drunks." *Id.* Police stopped the Suburban based solely on the anonymous phone tip. *Id.* at 205. After surveying Fourth Amendment law on anonymous tips, our supreme court reversed Kooima's conviction, explaining:

> a bare assertion by an anonymous tipster, without relaying to the police a personal observation of erratic driving, other facts to establish the driver is intoxicated, or details not available to the general public as to the defendant's future actions does not have the requisite indicia of reliability to justify an investigatory stop.

*Id.* at 206–11.

---

[4] "The three factors laid out in *Kooima* are very similar to the factors eventually applied by the Supreme Court in *Navarette*." Erika L. Lukenbill, Note, Navarette v. California*: The Supreme Court Walks a Wobbly Line in the Face of Drunk Driving Anonymous Tips*, 10 Liberty U. L. Rev. 107, 124 n.123 (2015).

*Kooima*'s majority opinion distilled three common elements in cases holding an anonymous tip carried "sufficient indicia of reliability" to justify an investigatory the stop.[5] *Id.* at 208. The first element was "an accurate description of the vehicle, including its location, so the police could identify the vehicle." *Id.* at 209. The second element was "personal, eyewitness observations made contemporaneously with a crime in progress that was carried out in public, identifiable, and observable by anyone." *Id.* at 208–09. And the third element was a description of "specific examples of traffic violations, indicating the report was more than a mere hunch." *Id.* Using those elements as points of comparison, the majority found the 911 call about Kooima's vehicle to be wanting because "the tipster did not relay a contemporaneous observation of erratic driving or any facts that would indicate the persons getting in the vehicle exhibited any signs of intoxication." *Id.* at 211. The majority mused: "We hope that in the future, a dispatcher will be able to get more than conclusory statements from the anonymous caller, so the tip has the requisite indicia of reliability in its assertion of illegality to justify a stop under the Fourth Amendment." *Id.* at 212.

That future is now. Here, the dispatcher was able to get more than conclusory statements from the anonymous caller. The caller first gave a detailed description of Naylor's car and its location, then called back with an equally detailed description of the truck Naylor was driving.[6] The caller also relayed

---

[5] A three-member dissent believed the tip provided a sufficient basis for the vehicle stop under existing Iowa precedent. *Id.* at 212 (Mansfield, J., dissenting) (citing *State v. Walshire*, 634 N.W.2d 625, 630 (Iowa 2001)).

[6] The second call was placed two minutes before midnight. At ten minutes after midnight, Officer Neely stopped the truck at West Third and West Streets, the corner where the caller said Naylor lived and would return. While not an amazing feat for the caller to predict

"personal, eyewitness observations" of Naylor's behavior as he walked to his car. *See State v. Walshire*, 634 N.W.2d 625, 630 (Iowa 2001) (upholding stop based on anonymous tip when "informant revealed the basis for his knowledge"). The caller described Naylor as so drunk he "couldn't even walk." The caller saw Naylor "fighting with a guy in the road" and "screaming and yelling" at people. Finally, sharing a very telling detail, the caller said Naylor was so inebriated he "ended up grabbing onto the street sign." These observations supported the caller's opinion Naylor was in no condition to drive. *Cf. State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004) (explaining "a person is 'under the influence' when the consumption of alcohol affects the person's reasoning or mental ability, impairs a person's judgment, visibly excites a person's emotions, or causes a person to lose control of bodily actions"). In our de novo review, we reach the same conclusion as the district court: the depth of the caller's information distinguishes this case from *Kooima*.

We recognize the caller did not observe any erratic driving by Naylor. But *Kooima* did not require such an observation—rather, the court entertained the possibility a tipster could provide "other facts to establish the driver is intoxicated." 833 N.W.2d at 211. Other courts "have come to different conclusions as to the sufficiency of the cause for a vehicle stop based solely upon an informant's observations of the non-driving behavior of a suspect." *State v. Scholl*, 684 N.W.2d 83, 88 (S.D. 2004) (collecting cases). In *Scholl*, the South Dakota Supreme Court upheld a stop when the informant reported the driver was "stumbling pretty badly"

---

Naylor would promptly return home, the accuracy of the prediction adds to the overall indicia of reliability.

as he left a bar and was having problems getting into his pickup. *Id.* at 89; *see also United States v. Chavez*, 660 F.3d 1215, 1222 (10th Cir. 2011) (finding reasonable suspicion where Walmart employee called to report potentially intoxicated person causing disturbance in employer's parking lot and provided dispatcher information to locate car the individual was driving); *State v. Zietlow*, 396 P.3d 740, 743 (Mont. 2017) (finding reasonable suspicion where caller reported her coworker's concern Zietlow was intoxicated, stumbling around, and smelled like alcohol and caller personally saw Zietlow "bugging other customers" and provided a detailed description of his vehicle and plates); *State v. Roberts*, 977 P.2d 974, 980 (Mont. 1999) (upholding stop based upon informant's report man who had been fighting got into driver's seat of a pickup and was so drunk he could "barely walk"); *but see State v. Miller*, 510 N.W.2d 638, 644–45 (N.D. 1994) (invalidating stop based upon informant's report of a possible drunk driver who could "barely hold his head up" in fast-food drive-up lane); *Stewart v. State*, 22 S.W.3d 646, 648, 650 (Tex. Ct. App. 2000) (invalidated stop based upon informant's report of convenience store customer who fell down twice while getting into his vehicle). We conclude the caller's report of Naylor's non-driving behavior carried sufficient indicia of reliability to provide the officer with reasonable suspicion for the traffic stop.

Our conclusion is also bolstered by the reasoning in *Navarette*. *See* 572 U.S. at 399. The *Navarette* majority viewed the caller's use of the 911 emergency system as an "indicator of veracity." *Id.* at 400 (noting features of 911 system "allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity"). To counter that view, Naylor points out the

caller in his case expressly said "this is anonymous"—tarnishing his credibility. But the caller made that statement after revealing to the dispatcher that he was bothered by Naylor's drunk driving because the caller's "kids play out here." From that revelation, we can discern the anonymous caller was likely a neighbor rather than a confidential informant. "Where a citizen informant is involved, a common sense analysis of the totality of the circumstances must be applied to assess the reliability of the information." *State v. Markus*, 478 N.W.2d 405, 408 (Iowa Ct. App. 1991). We measure the reliability of citizen informants by the nature of the circumstances under which they discovered the incriminating information. *Id.* Here, the caller saw Naylor create a disturbance in the street before driving away and the caller expressed concern for neighborhood safety. Those circumstances make it unlikely he harbored a "bad motive" for making the two 911 calls. *See id.*

Given the totality of the circumstances, we conclude the pair of 911 calls by the citizen informant offered sufficient details of Naylor's drunken behavior to supply Officer Neely with reasonable suspicion to stop Naylor's truck to investigate the allegation of operating while intoxicated. Because the district court properly overruled the motion to suppress, we find no cause to overturn Naylor's conviction.

**AFFIRMED.**